IN THE MATTER OF THE GUARDIANSHIP OF ANNE CANNON REYNOLDS II.

(Filed 21 March, 1934.)

1. **Guardian and Ward C a—Held: court should have authorized guardians to institute proceedings challenging validity of consent judgment of ward.**

In a proceeding under C. S., 1667, for the support and subsistence of defendant's wife and minor child, judgment was entered approving a contract whereby, among other provisions, a trust estate was established for the benefit of the child, and the contingent interests of the minor in trust estates created by the wills of her paternal grandparents were precluded. Thereafter the minor's father married again, and died before obtaining his majority. Upon disagreement between the guardians of the minor child by the first marriage, one of the guardians applied to the Superior Court for authority and direction to proceed to attack the con-

IN RE REYNOLDS.

sent judgment, in so far as it affected the interests of their ward, on the grounds that their ward was not properly represented therein, and that her interests were not properly presented to the court, and for other alleged irregularities. The other guardian filed a counter-petition alleging that a tentative family agreement had been drawn up under which the ward would receive additional benefits, and that it was to the best interest of the ward to accept the consent judgment and seek to consummate the proposed family agreement. The amount the ward would receive under the trust estates of her grandparents precluded by the consent judgment is much larger than the benefits that would accrue to her under the proposed family agreement. *Held*, the court should have authorized and directed the guardians to institute proper proceedings to challenge the validity of the consent judgment in so far as it affected the interest of their ward.

2. **Same—Instrument purporting to divest ward's contingent interest in trust estate held not to justify refusal of guardian's application to attack ward's consent judgment renouncing interest in the trust, it appearing that instrument purporting to divest ward's interest was void.**

A minor's interest in the trust estates created by her grandparents' wills was contingent upon her father's death prior to his reaching the age of twenty-eight without exercising the power of disposition granted in the grandparents' wills. The minor's mother and father were divorced. and in the proceedings under C. S., 1667, the court approved a contract providing, among other things, for a trust estate for the minor and precluding the minor's assertion of any right in the trust estates created by her grandparents. Thereafter the minor's father married again, and while still in his minority, attempted, by will executed in another state, to exercise the power of disposition under the trust estates created by the minor's grandparents. It appeared that the minor's father was a resident of North Carolina and had his domicile in this State. The minor's father thereafter died during his minority. *Held*, the purported will executed by the minor's father is not sufficient grounds for a court of equity to refuse the petition of the minor's guardian to be authorized and directed to enter proceedings to attack the consent judgment on grounds of irregularity and that it was not binding on the minor, it appearing that the purported will executed by the minor's father seeking to divest the minor's interest in the trust estates was void, the minor's father at the time of executing the instrument being under twenty-one years of age, C. S., 4128.

3. **Executors and Administrators F c—**

The rule that the law looks with favor upon family agreements affecting the distribution of an estate does not prevail where the rights of an infant are unfavorably affected.

4. **Infants B a—**

Courts of equity look with a jealous eye on contracts that materially affect the rights of an infant.

ADAMS, J., concurs in the result.

STACY, C. J., concurring.

BROGDEN, J., concurring in result.

CONNOR, J., dissenting.

IN RE REYNOLDS.

APPEAL by Cabarrus Bank and Trust Company, one of the guardians of Anne Cannon Reynolds II, from *Warlick, J.,* at April Term, 1933, of CABARRUS. Reversed.

Joseph F. Cannon on 8 September, 1931, petitioned the clerk of the Superior Court of Cabarrus County to appoint the Cabarrus Bank and Trust Company and Mrs. Annie L. Cannon guardians of the estate of Anne Cannon Reynolds II and that she was entitled to income from $500,000. The clerk made the order:

"Now these are therefore to authorize and empower the said guardians to enter in and upon all and singular the goods and chattels, rights and credits, of said minor child, wheresoever to be found, and the same to take into possession, secure and improve, and further to manage said estate and every part thereof for the benefit and advantage of the said minor child, and according to law."

We think the digest of this whole controversy is set forth in the judgment and decree tendered by the Cabarrus Bank and Trust Company, one of the guardians of Anne Cannon Reynolds II, and the judgment and decree signed by the court below which are as follows: Judgment and decree tendered by petitioner: "This cause coming on to be heard before his Honor, Wilson Warlick, judge presiding, at the regular April Term, 1933, of the Superior Court of Cabarrus County upon the petition of Cabarrus Bank and Trust Company, one of the guardians of Anne Cannon Reynolds II; and it appearing to the court that an order has heretofore been served upon Annie L. Cannon, coguardian of Anne Cannon Reynolds, II, directing her to show cause, if any she have, why the guardians of the said Anne Cannon Reynolds II should not be advised, ordered and directed to forthwith make the proper motion in the Superior Court of Forsyth County in the case of 'Anne Cannon Reynolds II, a minor, acting by and through her next friend, J. F. Cannon, and Anne Cannon Reynolds II, a minor, acting through her next friend, Howard Rondthaler, *v.* Zachary Smith Reynolds, a minor, *et al.,*' for the purpose of having the alleged judgment and decree of the court therein, and the alleged contract therein referred to, declared null and void in so far as they affect any of the property rights or interests of the said Anne Cannon Reynolds II in the trust estates created for her benefit by the wills of her paternal grandparents, and in the personal estate of her deceased father, Zachary Smith Reynolds; and it further appearing that, in response to said order, the said Annie L. Cannon, coguardian of Anne Cannon Reynolds II, having filed a response to said petition; and affidavits having been filed herein on behalf of both guardians.

"After reading and considering said petition and response thereto, and the affidavits appearing in the record, and the various exhibits appearing

in the record, and after hearing argument of counsel, the court, upon the undisputed facts, finds that the petitioner has shown reasonable, adequate, sufficient and probable cause for filing a motion in the Superior Court of Forsyth County, in the action above entitled, praying that the decree in said action be set aside upon the following grounds, to wit: (1) The alleged contract, referred to in the judgment and decree in the Forsyth County action, was null and void, in so far as the said Anne Cannon Reynolds II was concerned, inasmuch as she was a minor without legal capacity to enter into said contract, and inasmuch as no one had authority to enter into said contract for or on her behalf. (2) The alleged decree in said action simply attempted to ratify and confirm said illegal contract and, consequently, was itself null and void. (3) That Anne Cannon Reynolds II was neither a proper nor necessary party to said action; and had no existing cause of action properly before the court in said action. (4) The alleged contract and decree constituted an illegal, unwarranted and ineffectual attempt to alter and modify the wills of the infant's grandparents, R. J. Reynolds and Katherine S. Johnston. (5) The alleged contract and decree constituted an illegal and ineffectual attempt to release and extinguish any future contingent rights or interest which the said infant might have in the trust estates created by her said grandparents. (6) The alleged contract and decree constituted an illegal and ineffectual attempt to change the status or relationship of the said infant as a grandchild of her paternal grandparents. (7) The alleged contract and decree constituted an illegal and ineffectual attempt to divert the trust estates established by the wills of the grandparents of said infant by cutting the said infant out of any future participation therein. (8) The said alleged contract and decree constituted an illegal and ineffectual attempt to cut the said infant out of any future contingent rights she might have had in the trust estates created by her grandparents when there was obviously no necessity, and no finding by the court of a necessity, for so doing. (9) The proceedings in the action in Forsyth County were merely formal and were instituted and carried on only to give an apparent sanction to an alleged settlement previously agreed upon by the parties, and that the judgment entered in pursuance of the agreement, and by consent, merely, was only colorable. (10) That the said alleged contract and said alleged decree constituted an illegal and ineffectual attempt to divert a part of the trust estate created by the will of R. J. Reynolds for the benefit of Zachary Smith Reynolds from the said infant, Anne Cannon Reynolds II, in the event the said Zachary Smith Reynolds should die before reaching the age of twenty-one years, leaving her surviving; that, at the time of the entry of said contract and said decree, neither Zachary Smith Reynolds, nor anyone else for or on his behalf, was capable of thus

IN RE REYNOLDS.

diverting any part of said trust estate from the beneficiaries named in the will of R. J. Reynolds; nor did any party, or court, at said time, have the power or authority to change, modify or alter the will of the said R. J. Reynolds or the will of Katherine S. Johnston to such an extent as to eliminate the infant, Anne Cannon Reynolds II, as a prospective beneficiary under said wills, and any attempt to do so was utterly null, void and ineffective. (11) That, upon the death of the said Zachary Smith Reynolds, intestate, before reaching the age of twenty-eight years, the said Anne Cannon Reynolds II, under the terms and provisions of the wills of her grandparents, would participate in the trust estates therein created, as a child of Zachary Smith Reynolds in spite of the alleged contract and decree. (12) The said contract and decree did not involve the ordinary case of the sale of a future contingent interest to a definite grantee, which is sometimes enforceable in equity, but presented an attempted contract between a living father and his child by the terms of which the child, for a present consideration, purported to release and extinguish any future or contingent rights which she might have, in the trust estates established by her grandparents, by reason of her status as child of her father. The court holds that, upon the showing made by the petitioner, it is the duty of the guardians to file the proper and appropriate motion in the said action in Forsyth County for the purpose of having the decree entered therein set aside in so far as it affects the rights of the said Anne Cannon Reynolds II, the merits of said motion to be finally passed upon and determined upon the hearing thereof in the Superior Court of Forsyth County. The court further holds that the guardians should immediately take the necessary steps to protect the interests of their ward in the Maryland action referred to in the petition.

"The court further holds that the alleged new proposal, purporting to be submitted for or on behalf of the relatives of Zachary Smith Reynolds, involving the establishment of a foundation to the memory of Zachary Smith Reynolds, is not before this court. That the persons for or on behalf of whom said proposal is submitted are not parties properly before this court upon the hearing of the petition in this matter; that, consequently, in any event, this court could not properly consider such alleged proposal upon the hearing of the petition herein; that, if any new proposal is to be made, it should be addressed to the Superior Court of Forsyth County, in the action to which all persons in interest are parties. Wherefore, the said guardians are hereby authorized and directed to file the motion in the Superior Court of Forsyth County hereinbefore referred to and to take the necessary steps to protect the interests of their ward in the Maryland action referred to in the petition."

The judgment and decree signed by the court below is as follows: "This cause coming on to be heard before his Honor, Wilson Warlick, judge of the Superior Court, regularly holding the Superior Courts of the Fifteenth Judicial District in which is situate Cabarrus County, and regularly holding the April Term of the Superior Court of Cabarrus County on 27 April, 1933, upon the duly verified petition and motion of the Cabarrus Bank and Trust Company, one of the guardians of Anne Cannon Reynolds II, together with the exhibits attached thereto and made a part thereof, and the duly verified response and counter-petition of Mrs. Annie L. Cannon, the other guardian of Anne Cannon Reynolds II, together with the exhibits attached thereto and made a part thereof, and the affidavits of J. F. Cannon, Howard Rondthaler, W. N. Reynolds, W. M. Hendren, W. E. Church, Anne Cannon Reynolds I (now Anne Cannon Smith), the duly verified reply of said Cabarrus Bank and Trust Company with the affidavits thereto, and second affidavit of J. F. Cannon, and the arguments of counsel, representing the said Cabarrus Bank and Trust Company, guardian, the said Mrs. Annie L. Cannon, guardian, and the said Anne Cannon (Reynolds) Smith. After having heard and considered said petition, said response and counter-petition, with all exhibits thereto, the reply and the exhibits thereto, and all the other affidavits and argument of counsel, and conducting such hearing so that full investigation was made by the court of all matters referred to and involved in said petition, response and counter-petition and reply as they affect the infant, Anne Cannon Reynolds II, and the estate present and prospective of said infant, the court finds: That it is not for the best interest of said infant, under the existing conditions, that the prayer of the petition of Cabarrus Bank and Trust Company, guardian of Anne Cannon Reynolds II, be allowed, authorizing and instructing it to make a motion in the proceeding in Forsyth County referred to in said petition to set aside the judgment and decree entered therein, and therefore said petition is disallowed. That it is for the best interest of said infant, Anne Cannon Reynolds II, that the tentative proposition set out by Mrs. Annie L. Cannon, guardian, in her response and counter-petition, which is based upon a family agreement of the Cannon kin and the Reynolds kin of said infant and the representatives of Elizabeth Holman Reynolds and her infant, as contained in the letter of W. M. Hendren and affidavit filed in the record, etc., be made effective, and if said tentative proposition and family agreement can be made effective, that it would not only be for the best interest of said infant, Anne Cannon Reynolds II, but would be a fair, just and equitable settlement, in so far as said infant is concerned, of all the matters referred to in the petition, response and counter-petition. It is now, therefore, ordered, adjudged and decreed, after full and complete investigation

by the court: That it is not for the best interest of the infant, Anne Cannon Reynolds II, under the existing conditions that the prayer of the petitioner, Cabarrus Bank and Trust Company, be granted, and it is therefore denied. That it is for the best interest of said infant, Anne Cannon Reynolds II, that the tentative proposition and family agreement referred to and set out in the response and counter-petition of Annie L. Cannon, guardian of said Anne Cannon Reynolds II, be made effective and binding, and it is further ordered, adjudged and decreed that the said Mrs. Annie L. Cannon and Cabarrus Bank and Trust Company, guardians of said infant, Anne Cannon Reynolds II, be and they are hereby authorized, ordered and instructed to do all things such as appearing in court, conferring with interested parties, and all other things necessary or expedient to bring about and make effective the tentative proposition and family agreement referred to in said response and counter-petition, and when and if this proposition and agreement is put in final form, subject to the approval of the necessary court decrees, that the same be presented to this court for its further consideration and action. This cause is held for further orders and decrees."

The petitioner appellant groups its exceptions and assigns errors as follows: "That the court erred in refusing to advise and instruct the guardians of Anne Cannon Reynolds II to proceed forthwith to file the necessary motion and petition to set aside the consent judgment signed by his Honor, Judge Oglesby, on 4 August, 1931, in the Forsyth County Superior Court, in the case of Anne Cannon Reynolds I and II v. Zachary Smith Reynolds and others, upon the grounds and for the reasons specifically set forth in the petition filed before his Honor, Judge Warlick, in the Superior Court of Cabarrus County on 1 April, 1933, as shown by petitioner's exception No. 1, page 272, of the record.

"That the court erred in refusing to sign the decree tendered by the petitioner in the above entitled case. That the court erred in signing the decree appearing in the record for that his Honor thereby finally determined: (a) By implication, at least, that the said decree entered in Forsyth County Superior Court, hereinbefore referred to, was valid and binding against Anne Cannon Reynolds II, and effectually extinguished all her property rights under the wills of her grandparents; and (b) That it was for the best interests of said Anne Cannon Reynolds II that the 'tentative proposition' set forth in the response of Annie L. Cannon, coguardian, should be accepted, and that the said guardians be instructed to proceed forthwith, on behalf of said infant, to coöperate with the other interested parties to bring about a settlement based upon said tentative proposition, and join with the other said interested parties in an attempt to have said settlement, if and when made, approved by the court." An appeal was taken by the petitioner to the Supreme Court. The necessary facts in the controversy will be set forth in the opinion.

*Cansler & Cansler, William H. Beckerdite, Mabel C. Moysey and John M. Robinson for petitioner.*
*Brooks, Parker & Holderness for respondent.*
*Hartsell & Hartsell for Anne Cannon Reynolds (Smith).*

CLARKSON, J. In the judgment and decree that the petitioner, Cabarrus Bank and Trust Company, one of the guardians of Anne Cannon Reynolds II, submitted to the court below, to sign is the following: "Upon the undisputed facts, finds that the petitioner has shown reasonable, adequate, sufficient and probable cause for filing a motion in the Superior Court of Forsyth County, in the action above entitled, praying that the decree in said action be set aside," etc. We think from the record, the petitioners' judgment and decree should have been the judgment and decree of the court below. Winnowing the chaff from the grain, the controversy resolves itself into simple problems. Conceding on this record, the good intentions of all concerned in this controversy, yet the court below in the exercise of its equitable power should have granted petitioners' prayer. Courts of equity have always recognized infants' need for special care. Certain facts of record are undisputed. On 16 November, 1929, Anne Cannon and Zachary Smith Reynolds were married. On 23 August, 1930, Anne Cannon Reynolds II was born of this union. The parties to said marriage separated, because of "incompatibility," the infant being left with the mother. On 4 August, 1931, an alleged action was instituted, and terminated, at the July, 1931, criminal term of the Superior Court of Forsyth County, all the proceedings in said action being taken on the same day. The judgment and decrees in said action purporting to approve a contract releasing and extinguishing all rights which the infant might have in the trusts created by her paternal grandparents. In said action, it was alleged and admitted that Zachary Smith Reynolds "is a citizen and resident of the State of North Carolina, and has been such since his birth, and that the defendants, W. N. Reynolds and R. E. Lasater are the duly, legally and regularly constituted general guardians of and for the said Zachary Smith Reynolds." Seventeen days later, to wit, on 21 August, 1931, the said Zachary Smith Reynolds, claiming to be a resident of New York, attempted to execute a will which has never been probated, whereby he attempted to exercise his powers of appointment under the wills of his parents, in such a way as to preclude his wife and child from participating in the trusts therein set up. On 5 October, 1931, Anne Cannon Reynolds, the mother, went to Reno, Washoe County, Nevada. On 23 November, 1931, Anne Cannon Reynolds obtained a decree of divorce from Zachary Smith Reynolds in the Washoe County Court. On 23 November, 1931, Zachary Smith Reynolds obtained a license to

marry Elizabeth Holman Reynolds, said marriage being performed on 29 November, 1931. On 6 July, 1932, Zachary Smith Reynolds died in Winston-Salem, North Carolina, being at the time, under the age of twenty-one years. On 10 January, 1933, a child was born to Elizabeth Holman Reynolds, said child bearing the name of Zachary Smith Reynolds, Jr. On 24 March, 1933, the Safe Deposit and Trust Company of Baltimore, trustee of the hereinafter named trusts, instituted an action in the Circuit Court of Baltimore City, Maryland, for the purpose of having determined the proper administration and distribution of said trusts.

On these undisputed facts, if the will of Zachary Smith Reynolds made in New York (when an infant) was inoperative and void and the proceeding as to Anne Cannon Reynolds II in the Forsyth Superior Court is void, the property of Zachary Smith Reynolds, which he would participate in under the will of his father, R. J. Reynolds and mother, Katherine S. Johnston—formerly Mrs. R. J. Reynolds, would descend to his two infant children: (1) Anne Cannon Reynolds II (child of Anne Cannon Reynolds (Smith), now three years of age; and (2) Zachary Smith Reynolds, Jr. (child of Elizabeth Holman Reynolds), now a year old, who would share equally in said trusts. When Zachary Smith Reynolds would have reached 28 years of age (October, 1939), the entire corpus of that trust would be equally divided between them. Among the provisions in the will of R. J. Reynolds, in substance: Upon reaching the age of twenty-eight years, Zachary Smith Reynolds was to receive the corpus of the trust. Before reaching the age of twenty-eight years, if Zachary Smith Reynolds died, leaving a will, the trust continued for the benefit of his devisees until he would have arrived at the age of twenty-eight years, whereupon the corpus of the trust was to be turned over to the devisees. Before reaching the age of twenty-eight years, if Zachary Smith Reynolds died intestate leaving issue, the trust was continued for the benefit of his children—living at his death—until the time when he would have arrived at the age of twenty-eight years, whereupon the corpus of the trust became vested in his children, then surviving.

The will of Katherine S. Johnston, among its provisions, in substance: Established a trust for her son, Zachary Smith Reynolds. The trust continued during the life of Zachary Smith Reynolds. Upon his death, the corpus of the trust went to his devisees by will; and, "in default of such appointment" to his "descendants" living at his death, with an immaterial proviso as to a limited continuance of the trust. During her lifetime, she, by deed, also established for Zachary Smith Reynolds, a comparatively small trust upon the same terms as those outlined in her will.

At the time of the institution of the action in Forsyth County, on 4 August, 1931, the corpus of the trust established for Zachary Smith Reynolds, by will of R. J. Reynolds, had a value of some twenty million dollars. The trust established for Zachary Smith Reynolds by the will of his mother, Katherine S. Johnston, yielded an annual income of some fifty thousand dollars.

Zachary Smith Reynolds had made no support for his wife after he had left her, although the child had been born on 4 August, 1931. J. F. Cannon petitioned the clerk of Forsyth County Court to appoint next of friends to Anne Cannon Reynolds and Anne Cannon Reynolds II. The petition contained the following allegations: "The said Zachary Smith Reynolds abandoned his wife and child and has not made suitable provision for their needs and requirements; that the said Zachary Smith Reynolds is possessed of a considerable estate, and it is necessary and desirable that an action should be instituted against him by his said wife and child to protect their property rights and to secure suitable compensations and allowances from the court for them." Application was made that he be appointed as next friend to his daughter, Anne Cannon Reynolds, and he also made application that the court appoint Howard Rondthaler as next friend to Anne Cannon Reynolds II, with power and authority to institute and prosecute to final judgment such actions and proceedings as they may be advised are necessary and desirable to completely protect the financial and property rights of both said infants.

The appointment was duly made. A complaint was filed the same day against Zachary Smith Reynolds and other Reynolds heirs and the guardians of Zachary Smith Reynolds and the Safe Deposit and Trust Company, of Baltimore, as trustee, under the wills of R. J. Reynolds and Katherine S. Johnston. The allegations of the complaint, in part, were as follows: "That under the laws of the State of North Carolina, the plaintiffs, Anne Cannon Reynolds and Anne Cannon Reynolds II are entitled to allowances for their support and maintenance and to assure their continued support and maintenance, all in accord with and in keeping with the estate, financial position and social conditions of the said Zachary Smith Reynolds. That pending the institution of this action, negotiations have been in progress between the plaintiffs and defendants in an effort to reach a settlement and avoid litigation. That as a result of these negotiations and conferences, the conclusion was reached by all concerned that it was for the best interest of all parties to this action that a contract be entered into which should constitute a final and complete accord and settlement of the property rights of the parties as between themselves, and in and to the trust estates created by the wills of R. J. Reynolds and Katherine S. Johnston; that pursuant

to these negotiations, a contract has been prepared and agreed upon, which is hereto attached, marked Exhibit A, and hereby made a part of this complaint, which is submitted to the court for confirmation and approval; if the court should be of the opinion that said contract is fair, that it is within the power of the parties, upon approval by the court, to make it, and that said contract constitutes a full, fair, complete and final accord and settlement as provided therein."

The answers of defendants were filed on 4 August, 1931. The judgment was signed the same day, some hour or so after the matter was presented, by the judge holding the 27 July Term of Forsyth County Superior Court. In the judgment is the following: "And the court being of opinion that under the general law now obtaining and by virtue of the provisions of chapter 102 of the Public Laws of North Carolina, Session of 1931, authorizing declaratory judgments in such cases, that it has the power and authority to approve the contract and trust agreement herein submitted for its consideration."

The complaint seems to have been founded on C. S., 1667, which, in part, is as follows: "If any husband shall separate himself from his wife and fail to provide her and the children of the marriage with the necessary subsistence according to his means and condition in life," etc., but reached out to cover an agreement which deprived Anne Cannon Reynolds II of her interest in the trust funds set up by her grandfather, R. J. Reynolds and grandmother, Katherine S. Johnston, in their wills.

Public Laws, 1931, chap. 102, provides for declaratory judgments. The action was not brought under the declaratory judgment act. In the proceedings, declaratory relief is not sought. *Walker v. Phelps,* 202 N. C., 344; *Light Co. v. Iseley,* 203 N. C., 811; *Wright v. McGee, ante,* 52. The prayer for judgment was for a suitable allowance according to the allegations of the complaint which would be under C. S., 1667, and joined with that is the prayer that the contract, a separate instrument, be ratified and confirmed by the court.

No summons was issued in said action. The complaint was simply placed in the clerk's office and the defendants, including the nonresident trustee and several other nonresidents, some of whom appear to have been minors, purported to come in and answer, practically admitting all the allegations of the complaint and consenting that the requested judgment and decree be entered. The action has the appearance of being instituted solely for the purpose of obtaining maintenance and support. The complaint in said action, sets out no controversy as to the property rights of the infant, Anne Cannon Reynolds II. There is no allegation as to any dispute in reference to the infant's contingent interest in said trusts. No reason is alleged for seeking to alter or modify the terms of said trusts, in so far as the infant, Anne Cannon Reynolds II, is con-

cerned. No necessity is set forth for seeking to eliminate or change her interests in said trusts. Neither Anne Cannon Reynolds nor Zachary Smith Reynolds was present. It is doubtful if the wills of R. J. Reynolds and Katherine S. Johnston, which established the trusts, were read, the only statement being that they "were presented to the court." No evidence was introduced. No reason was given to the court for attempting to alter the trusts so as to exclude the infant, Anne Cannon Reynolds II, from future participation therein, except the statement that Zachary Smith Reynolds had threatened to exercise the powers of appointment in such a way as to exclude her. No one called the court's attention to the fact that the entire provision which was being made for the infant, Anne Cannon Reynolds II—was being made out of the accumulated income from one of the trusts—and that, consequently, it was not necessary to disturb the corpus of said trusts in any way.

The judgment further, in part, was: "That the defendant, the Safe Deposit and Trust Company of Baltimore, as trustee, under the will of R. J. Reynolds, deceased, has the power and authority to set aside, out of the accumulated, and, or current income of the share held in trust for the defendant, Zachary Smith Reynolds, under said will—the two trust funds for the creation of which provision is hereby made. . . . That the minor plaintiffs, Anne Cannon Reynolds and Anne Cannon Reynolds II, upon the execution and delivery of said contract and trust agreement and the setting up of the trust estates therein provided, be and they are hereby declared forever estopped and barred from making other or further claims for financial support, aid or maintenance from the said Zachary Smith Reynolds, or any estate owned or left by him, whether the same be held in trust or otherwise, and from making the further claim to the whole or any part of the trust estates created by the will of R. J. Reynolds or Katherine S. Johnston, distribution of said trust estates at the time fixed for distribution as provided in said wills, to be made to the persons entitled thereto as if Zachary Smith Reynolds and Anne Cannon Reynolds had never been married and Anne Cannon Reynolds II had never been born. That the said contract and trust agreement is hereby made a part of this decree as fully and completely as if entirely incorporated herein, and the clerk of the court will record said contract and trust agreement along with this judgment."

The trust set up under the agreement, for Anne Cannon Reynolds II, the infant, was $500,000. The estates which under changed conditions, her portion is now estimated under the facts of this record, to be worth some $12,000,000. In this proceeding, it appears that at least one of the infant defendants who, with others, were made defendants, was never served with summons. Speaking to the subject in *Wyatt v. Berry,* 205 N. C., 118 (122), in reference to proceedings of this kind, it is said:

In re Reynolds.

"The facts disclosed by the record in this case, show the wisdom of the language used by *Bynum, J.,* in *Moore v. Gidney,* 75 N. C., 34, who in speaking of the statutory requirements for a valid judgment against an infant, says: 'So careful is the law to guard the rights of infants, and to protect them against hasty, irregular, and indiscreet judicial action. Infants are in many cases, the wards of the courts and these forms enacted as safeguards thrown around the helpless, who, often the victims of the crafty, are enforced as being mandatory and not directory only. Those who venture to act in defiance of them, must take the risk of their action being declared void or set aside.' "

In North Carolina Practice and Procedure in Civil Cases (McIntosh), p. 721, is the following: "In the case of infant parties, the next friend, guardian *ad litem,* or guardian cannot consent to a judgment or compromise without the investigation and approval by the court."

In *Rector v. Logging Co.,* 179 N. C., 59 (62 and 63), quoting with approval *R. R. v. Lasca,* 79 Kas., 311, is the following: "Where the proceedings in court are merely formal, and are instituted and carried on only to give an apparent sanction to the settlement, and there is no judicial investigation of the facts upon which the right or extent of the recovery is based, a judgment entered in pursuance of the agreement, and by consent merely, is only colorable, and will be set aside in a proper proceeding when its effect, if allowed to stand, would be to bar the infant's substantial rights."

In *Marsh v. Dellinger,* 127 N. C., 360 (363), it is said: "The defendants are infants, and the court of equity, while it has the power to order the sale, must see that the infants are properly represented and protected, and must find as a fact that a sale of this property, made before the death of the life-tenant—the time specified in the will for its sale—will be for their benefit. In courts of equity, in such cases, the usual rule was for the court to refer the matter to the master, or to some other competent person, who inquired, took evidence by affidavit—of reliable disinterested persons—as to whether it would be to the interests of the infants to order the sale, which he reported to the court, with a statement of the evidence. We do not mean to say or to intimate that anything intentionally wrong has been done in this matter, but to say that it devolves on the court to take these means of informing itself, in order that infants may be protected. *Ferrell v. Broadway,* 126 N. C., 258." *Bunch v. Lumber Co.,* 174 N. C., p. 8; *Patrick v. Bryan,* 202 N. C., 62.

The case of *Oates v. Texas Co.,* 203 N. C., 474, is distinguishable. The action was for *tort* brought "after the lapse of twelve years," and in this *tort* action, "after investigation by the court." This controversy is equitable in its nature, involving an infant's interest in large estates of her grandparents—done hurriedly, practically by consent—hardly ad-

IN RE REYNOLDS.

versary—in a proceeding for one purpose: For necessary subsistence under C. S., 1667, and made elastic—to reach out and deprive this infant, Anne Cannon Reynolds II, of her rights in the estates of her grandparents. We think where such important rights of an infant are concerned, the facts should fully appear and be set forth and if necessary found by a referee, under the old system by the master taking testimony. Conclusions in affidavits are not sufficient to base a decree, the facts must appear in detail so that a court of equity can weigh everything and then make the decree. It will be noted in *Spencer v. McCleneghan,* 202 N. C., 662, all the facts are fully and at length set forth and it appears from these facts that the agreement was not harmful, but was beneficial to the infant. "The court below found the facts at length with care."

As to the power to alter a testamentary trust, the following is stated in 26 R. C. L., at p. 1283: "A court of equity has the power to do whatever is necessary to be done to preserve the trust from destruction, and in the exercise of this power it may, under certain unusual circumstances, modify the terms of the trust to preserve it, but not to defeat or destroy it. Courts are slow to exercise their power to modify the terms of a trust, and will only do so when it clearly appears to be necessary." In *Bank v. Alexander,* 188 N. C., 667 (672): "The object is not to destroy the trust, but preserve it." The alleged threat of Zachary Smith Reynolds, who was under age, to execute an unfavorable will, furnished no necessity to destroy the trusts or alterations of the terms of the trusts. C. S., 1667, gave the wife a legal right to make her husband provide for her and her child with the necessary subsistence according to his means and condition in life. This, in the beginning, seemed the primary object, but the proceeding reached out and attempted to destroy the trust and forever to bar this infant, Anne Cannon Reynolds II, as if she "had never been born." It is contended by petitioner that the Forsyth judgment and decree is in effect to change the infant's status so as to prevent her participation in the testamentary trusts set up by her grandfather and grandmother, and cites *Cannon v. Nowell,* 51 N. C., 436. In 28 A. L. R., p. 433, this case is placed under the minority rule.

In 17 A. L. R., at page 601, we find: In equity, the general rule: "It is well established that a person expecting to receive property by will, distribution, or descent may make a transfer of the expectancy to a third person, which will be valid and enforceable in equity." Citing many North Carolina cases. In *James v. Griffin,* 192 N. C., 285 (286), citing many authorities, we find: "A contingent interest in land is generally descendible and devisable; it may also be released if the contingent remainderman is specified and known." This attitude we do not think

10—206

In re Reynolds.

material under the facts of this record. It is debated by the contestants, at length. The language of the Forsyth judgment and decree may not be construed as a sale or release from an examination of R. J. Reynolds' will under the facts and circumstances of this case. In *Shannonhouse v. Wolfe*, 191 N. C., 769 (773), citing numerous authorities, it is said: "It is true, the exercise of that power can only be justified by some exigency which makes the action of the court, in a sense, indispensable to the preservation of the interests of the parties in the subject-matter of the trust, or, possibly, in case of some other necessity, of the most urgent character." *Woody v. Christian*, 205 N. C., 610.

In Item 8 of R. J. Reynolds' will in clear and unmistakable language it states: "I hereby provide that all payments to be made hereunder to my beneficiaries shall be into their own hands and not into the hands of others, whether claiming by their authority, or otherwise." As to the principal trusts, therefore, the above quoted language manifested an intention on the part of the testator to negative any contracts or assignments by a beneficiary affecting his interests.

The alleged will of Zachary Smith Reynolds appears to be inoperative and void. When the alleged will was executed in New York, he was under the age of 21 years. C. S., 4128, is as follows: "No person shall be capable of disposing of real or personal estate by will until he shall have attained the age of twenty-one years." General Laws of State, in force at time of execution and performance of contract, become part thereof. *Ryan v. Reynolds*, 190 N. C., 563; *Monger v. Lutterloh*, 195 N. C., 274; *Steele v. Ins. Co.*, 196 N. C., 408. By analogy, to show R. J. Reynolds' intent, it can be inferred that his will was made with the North Carolina law in view. No language gives the right of appointment under 21 years of age. In this connection, it should be noted that the judgment and decree was signed in Forsyth County Superior Court on 4 August, 1931, which expressly states that Zachary Smith Reynolds "under the statute law of North Carolina, cannot validly make a will disposing of his share in said estate until he reaches the age of twenty-one years," and further, "that in the event of the death of the said Zachary Smith Reynolds, prior to his reaching the age of twenty-one years, the said infant child, Anne Cannon Reynolds II, would inherit his entire estate."

The wills of R. J. Reynolds and Katherine S. Johnston appear to indicate an intention that Zachary Smith Reynolds could only exercise the power of appointment after he became 21 years of age and on that account, the New York will would appear to be inoperative and void. It appears that his domicile was in North Carolina. In the complaint filed in the Forsyth County proceedings on 4 August, 1931, just seventeen days before the alleged execution of the New York will, it was

alleged: "That the defendant, Zachary Smith Reynolds, is a citizen and resident of the State of North Carolina, and has been such since his birth, and that the defendants, W. N. Reynolds and R. E. Lasater, are the duly, legally and regularly constituted general guardians of and for the said Zachary Smith Reynolds." In the answer filed on his behalf by his guardians, this allegation is admitted.

In *Thayer v. Thayer,* 187 N. C., 573, it is said at p. 574: "A domicile of choice is a place which a person has chosen for himself, but an unemancipated infant, being *non sui juris,* cannot of his own volition, select, acquire or change his domicile." We do not think that marriage changed his status in this jurisdiction. In some instances, where the right is given him under the statute, the marriage of an infant emancipates the infant as to his rights to earnings. See *Wilkinson v. Dellinger,* 126 N. C., 46; *Little v. Holmes,* 181 N. C., 413; C. S., 4134. It is strongly urged by appellees that this is a family agreement and for the peace and tranquility of families and that contracts of this nature are favorites of the law. In *Tise v. Hicks,* 191 N. C., 609 (613), it is said: "Family settlements, such as that made by these brothers and sisters, when fairly made, and when they do not prejudice the rights of creditors, are favorites of the law." This is the well settled rule in this jurisdiction. These settlements are usually between members of families who are *sui juris,* of full age, with capacity to act, but not so in this case where we are dealing with the *rights of an infant.* Courts of equity look with a jealous eye on contracts that affect materially, the rights of infants.

In Goodrich on Conflict of Laws (1927), speaking to the subject at p. 51: "So the courts say without dissent, that the domicile of the legitimate minor child is that of his father, if the latter is living. The domicile of origin is that of the father at the time of the infant's birth. If the father's domicile is changed, that of the infant necessarily follows. And, as in the case of the wife, physical presence of the infant is not necessary to establish his domicile at the domicile of the father. Nor can the minor by his own act, while under the disability of infancy, establish a separate domicile for himself, either by leaving the parental home of his own volition, being taken away by another or sent by the parents. Thus far the law seems clear." . . . At p. 56: "If both parents are dead, many statements may be found saying that the domicile of the minor is that of the last surviving parent at the time of the latter's death, and that the minor cannot acquire another until he becomes of age." We think it unnecessary to consider the threat of Zachary Smith Reynolds' purpose in going to New York to acquire a domicile to make a will and its illegality in this jurisdiction. It must be borne in mind also that Zachary Smith Reynolds' guardians under

the will of his father, were domiciled in Forsyth County. After the Forsyth County decree and the alleged will of Zachary Smith Reynolds was made in New York, the following is in the record: "A proposition was made by the counsel of the uncle and aunts on the Reynolds side, and agreed to by counsel for Elizabeth Holman Reynolds and her child, wherein it is proposed that notwithstanding the former contract and agreement, in order to make her child's inheritance in every way equal to that received by the child of Elizabeth Holman Reynolds, to pay to Anne Cannon Reynolds II, an additional one and one-half million dollars, and that the balance of the estate, which, under the will of Zachary Smith Reynolds executed in New York, descends to his brother and sisters, shall be devoted to the establishment of a foundation in memory of Zachary Smith Reynolds, to be used for charitable and eleemosynary purposes in the State, whether supported by fraternal orders or by religious denominations."

Of course, if the will in New York is void, this "proposition" cannot be enforced. This foundation idea is commendable, but not out of this infant's property, if it is hers, she can only speak when she arrives at the age of twenty-one years. It is to their credit that those parties to the Forsyth County Court decree think it an act of bad faith on their part to repudiate same and are "unwilling to be put in such a position." The judgment of the court below after refusing the prayer of petitioners, the Cabarrus Bank and Trust Company, one of the guardians of Anne Cannon Reynolds II, then the "tentative proposition" is set forth and it is ordered, adjudged and decreed that the guardians, including this petitioner: "Are hereby authorized, ordered and instructed to do all things such as appearing in court, conferring with interested parties, and all other things necessary or expedient to bring about and make effective, the tentative proposition and family agreement referred to in said response and counter-petition, and when and if this proposition and agreement is put in final form, subject to the approval of the necessary court decrees, that the same be presented to this court for its further consideration and action."

The Reynolds' legatees, under the alleged New York will, Elizabeth Holman Reynolds and her baby, Zachary Smith Reynolds, Jr., are not parties to this proceeding. There is nothing in the record to bind any of them to anything. They could have a change of mind at any moment. If the Forsyth judgment and decree stands and Anne Cannon Reynolds II is cut off from any participation in the testamentary trust funds of her grandparents, and the New York will is declared void, Elizabeth Holman Reynolds' baby would be the sole beneficiary of the testamentary trust. If the Forsyth judgment and decree is set aside, each of the children of Zachary Smith Reynolds would share alike. From a careful

review of the law and facts of this case we see no good reason why the petition of the Cabarrus Bank and Trust Company, one of the guardians of Anne Cannon Reynolds II, should not be granted to the end, that the Forsyth judgment and decree be inquired into and such judgment adjudged and decreed as the facts and circumstances under the law may warrant.

If this judgment and decree is set aside and the New York will is void, each of Zachary Smith Reynold's children would get some $12,000,000. If this Forsyth judgment and decree is not set aside and the New York will is not void, the baby child of Elizabeth Holman Reynolds would get the entire estate. The Forsyth judgment and decree if it stands, has the effect to deprive this infant, Anne Cannon Reynolds II, now 3 years old, of some $12,000,000 and as stated in that judgment and decree, to the extent as if Anne Cannon Reynolds II "had never been born." We think that petitioner's procedure in this matter correct. Before this petition by the Cabarrus Bank and Trust Company, one of the guardians of Anne Cannon Reynolds II, was instituted, from the record it appears that all consideration and courtesy was shown the parties and their attorneys interested in this controversy. As one of the guardians, it had a duty to perform. In the performance of this duty, it seems that from $500,000 given in the Forsyth Court judgment and decree, the estate of this infant was by a "tentative proposition," increased $1,500,000 more. The guardians should take necessary steps to protect the interest of their ward, Anne Cannon Reynolds II, in the Maryland action referred to in the petition.

The petition of the Cabarrus Bank and Trust Company, guardian of Anne Cannon Reynolds II, should have been granted. For the reasons given, the judgment and decree of the court below is

Reversed.

ADAMS, J., concurs in the result.

STACY, C. J., concurring: The case, briefly stated, is this:

1. On 8 September, 1931, the Cabarrus Bank and Trust Company and Mrs. Annie L. Cannon were duly appointed by the clerk of the Superior Court of Cabarrus County guardians of the estate of Anne Cannon Reynolds II, an infant at that time a little over a year old.

2. It is alleged that said infant has certain rights in the testamentary trusts established by the wills of her paternal grandparents, R. J. Reynolds and Katherine S. Johnston, which, if still subsisting, amount to approximately $12,000,000.

3. It is further alleged that at the July Criminal Term, 1931, Forsyth Superior Court, in a consent proceeding, an agreement was ostensibly authorized whereby said infant was to get $500,000 in settlement of her interests in said testamentary trusts.

4. It is the opinion of the Cabarrus Bank and Trust Company that the alleged contract sought to be approved by the decree in the Forsyth County proceeding is null and void, in so far as it attempts to deal with the rights of Anne Cannon Reynolds II, because the matter was not properly before the court and no one was legally authorized to enter into the alleged contract on behalf of said infant, and for other reasons.

5. Conceiving it to be its duty, therefore, in the discharge of its obligation as guardian, suggestion was made to the coguardian that they seek to have the decree in the Forsyth County proceeding vacated and set aside.

6. Upon disagreement between the guardians as to their duty in the premises, the Cabarrus Bank and Trust Company applied to the Superior Court for instruction and authority to proceed as it feels in duty bound to do.

7. Mrs. Annie L. Cannon, coguardian, sets out in her response and counter-petition a "tentative proposition," which, if accepted and carried out, it is alleged, will result in said infant's estate profiting to the extent of an additional $1,500,000. This "tentative proposition" is based on a proposed family agreement, and that the matters, suggested on the hearing, be not further stirred.

8. The court being of opinion that, under the existing conditions, the best interests of the infant ward would be subserved by accepting the "tentative proposition" of the respondent, and not by granting the prayer of the petitioner, denied the same, and instructed the guardians "to do all things such as appearing in court, conferring with interested parties, and all other things necessary or expedient to bring about and make effective the tentative proposition and family agreement referred to in said response and counter-petition."

The ruling was evidently based upon the assumption that the Forsyth decree is valid, otherwise the amount probably surrendered is disproportionate to the amount tentatively offered. But the validity of the Forsyth decree was not before the court for determination. The question was whether sufficient showing had been made to warrant the instruction that the validity of the decree should be challenged. Apparently the showing was such as to justify the court in informing itself upon the validity of this decree before finally foreclosing the rights of the infant ward in the respect suggested.

Nevertheless, it is said the practical certainty of a million and a half under the circumstances disclosed by the record, is better for the infant than the uncertainty of the quest for twelve millions. The matter was not presently before the court with sufficient knowledge and in such shape as to call for the exercise of its discretion on the acceptance or rejection of this tentative proposition. The two guardians are the only parties to this proceeding, and they alone in their representative capacity

IN RE REYNOLDS.

would be bound by the judgment. No ward can complain if his guardian in good faith and in the exercise of his best judgment pursues the mandate of the law and loses a tentative offer of settlement such as here disclosed, but he might question a departure from established rules of procedure.

BROGDEN, J., concurring in result: Anne Cannon Reynolds II had two guardians duly appointed and qualified. On 4 August, 1931, a decree had been entered in Forsyth Superior Court in her behalf, whereby she received $500,000 in full settlement and satisfaction of all claim, right and interest in the estate of her father, Smith Reynolds, and in certain trust funds set up in the wills of her grandfather and grandmother. Her father died before reaching twenty-one, and by reason of the far-reaching change in her status occasioned by the death of her father, it appeared that she would probably be entitled to receive twelve million dollars unless she was foreclosed by the decree awarding her a half-million dollars. She could not act for herself by reason of the fact that she was an infant of tender years. Should those who had her property rights in charge undertake to assert a claim to the twelve million dollars or to assume that her rights had been foreclosed by the Forsyth County judgment as though "she had never been born?"

The solution of this question by reason of the large amount involved, constituted a momentous decision, particularly for one who, by reason of legal disability, was unable to either speak or think for herself. The guardians disagreed as to the proper course to pursue. The grandmother of the infant was firmly of the opinion that the Forsyth judgment ought to stand for the reason, among others, that it was the product of patient negotiation within the councils of the families and interested parties. Upon the other hand, the Cabarrus Bank and Trust Company, the other guardian, held the view that, by reason of changed circumstances resulting from the death of the father, the minor ought to have a fair chance and an open field in which to assert her property rights, and that a difference between a half-million and twelve millions in money was of too much moment to justify inaction.

Thereupon the Cabarrus Trust Company called to the coguardian to join in an attack upon the Forsyth County judgment, which unassailed obviously stood as an estoppel upon the assertion of the future or contingent rights of the minor. The coguardian refused to join in the attack. Consequently, the Cabarrus Trust Company filed a petition in the Superior Court of Cabarrus County, setting out the history of the proceeding in Forsyth and asked specifically for "the advice and instructions of the court as to whether it and its coguardian, Mrs. Annie L. Cannon, should be ordered and directed forthwith to make the proper motion in the Superior Court of Forsyth County in the case of Anne

Cannon Reynolds, a minor, acting by and through her next friend, J. F. Cannon, and Anne Cannon Reynolds II, a minor, acting by and through her next friend, Howard Rondthaler *v.* Zachary Smith Reynolds, a minor, and others for the purpose of having the alleged contract and decree of said court attempting to confirm the same and authorize the execution thereof by the parties therein named set aside and declared null and void insofar as they affect any of the property rights of any and every nature and description of his said ward, Anne Cannon Reynolds II, in the trust estates created for her benefit by the wills of her paternal grandparents, and in the personal estate of her deceased father," etc. Obviously, the petitioner could not in Cabarrus County attack a final judgment in Forsyth County; nor could the judge sitting in Cabarrus County set aside or modify the said judgment in Forsyth. *Cahoon v. Brinkley,* 176 N. C., 5, 96 S. E., 650; *Gaster v. Thomas,* 188 N. C., 346, 124 S. E., 609; *Bisanar v. Suttlemyre,* 193 N. C., 711, 138 S. E., 1. Hence, the sole question before the chancellor was whether the minor, Anne Cannon Reynolds II, had the right to proceed to Forsyth County and lodge a motion to set aside a judgment which shut the door of the law in her face so far as asserting any further right in and to the property specified. There were no parties before the court except the guardians. The petition alleged grave irregularities and fatal defects in the Forsyth judgment. These allegations were denied and evidence offered in support of such denial. The New York will was not upon the lap of the chancellor. The family settlement and the laudable intentions of the family were not upon the lap of the chancellor. The actual validity of the Forsyth judgment was not upon the lap of the chancellor. The ultimate question was whether the minor had alleged and shown the existence of such facts or probable facts as to entitle her to be heard by the law of her country in a proceeding in Forsyth County to unloose the bar of that judgment. The guardians held in good faith opposite opinions as to the wisest course to pursue. Notwithstanding, it must be borne in mind that Anne Cannon Reynolds II is the heroine of the play and the clashing judgment of the guardians is incidental and secondary.

The trial judge found that it was not for the best interest of the minor to be allowed to be heard in Forsyth County. Both the history and traditions of equity as held and applied in this State demonstrate that it always lends an attentive ear to the call of widows, orphans and minors, and in determining the bare right to be heard upon the merits of a proposition, it has not required the highest and most technical degree of proof. I am of the opinion that the facts disclosed in the record are sufficient to entitle Anne Cannon Reynolds II to a chance to be heard in the courts in a proper proceeding in Forsyth County. Of course, even a minor ought not to be heard in an assault upon a final judgment for inconsequential or captious reasons. Neither should the right to be

heard upon the merits be denied because the evidence produced is not "horse high, bull strong and pig tight." Therefore, I am of the opinion that the trial judge erred in denying to the minor the right to be heard upon the merits of the controversy.

The Forsyth decree may have been eminently proper and advantageous not only at the time it was rendered, but even now. The proposed family settlement may be eminently wise and proper. That, however, is not the point. The right of the minor to question the proceeding in Forsyth in the due and orderly manner prescribed by law, is the point as I conceive it, and that right has been improvidently denied by the judgment rendered.

CONNOR, J., dissenting: After a full hearing of this cause, and a careful consideration of all the matters presented by the guardians of the infant, in support of their respective contentions as to the best interest, financial and otherwise, of their ward, with respect to the matters and things referred to in the petition of the Cabarrus Bank and Trust Company, one of the guardians, and in the response and counter-petition of Mrs. Annie L. Cannon, the other guardian, Judge Warlick found:

"1. That it is not for the best interest of said infant, under the existing conditions, that the prayer of the petition of the Cabarrus Bank and Trust Company, guardian of Anne Cannon Reynolds II, be allowed, authorizing and instructing it to make a motion in the proceeding in Forsyth County referred to in said petition to set aside the decree entered therein.

·"2. That it is for the best interest of said infant, Anne Cannon Reynolds II, that the tentative proposition set out by Mrs. Annie L. Cannon, guardian, in her response and counter-petition, which is based upon a family agreement of the Cannon kin and the Reynolds kin of said infant, and the representatives of Elizabeth Holman Reynolds and her infant, as contained in the letter of W. M. Hendren and affidavit filed in the record, etc., be made effective, and if said tentative proposition and family agreement can be made effective, that it would not only be for the best interest of said infant, Anne Cannon Reynolds II, but would be a fair, just and equitable settlement, in so far as said infant is concerned, of all matters referred to in said petitions, response and counter-petition."

On these findings made by him, it was ordered, adjudged, and decreed by Judge Warlick:

"A. That it is not for the best interest of the infant, Anne Cannon Reynolds II, under the existing conditions, that the prayer of the petitioner, Cabarrus Bank and Trust Company, be granted, and it is therefore denied.

"B. That it is for the best interest of said infant, Anne Cannon Reynolds II, that the tentative proposition and family agreement referred to and set out in the response and counter-petition of Annie L. Cannon, guardian of said Anne Cannon Roynolds II, be made effective and binding, and it is further ordered, adjudged, and decreed that the said Mrs. Annie L. Cannon and Cabarrus Bank and Trust Company, guardians of said infant, Anne Cannon Reynolds II, be and they are hereby authorized, ordered, and instructed to do all things such as appearing in court, conferring with interested parties, and all other things necessary or expedient to bring about and make effective the tentative proposition and family agreement referred to in said response and counter-petition, and when and if said proposition and agreement is put in final form, subject to the approval of the necessary court decrees, that the same be presented to this court for its further consideration and action.

This cause is held for further orders and decrees."

The only questions presented to Judge Warlick at the hearing of the cause were (1) whether, in view of the conditions now existing and affecting the estate of their ward, it is for her best interest that her guardians be authorized and instructed by the court to move in the Superior Court of Forsyth County that the decree rendered in the action referred to in the petition be set aside and vacated as to their ward, on the ground that said decree is void as to her; and (2) whether, if the court be of the opinion that the guardians should not be so authorized and instructed, it is for the best interest of their ward, that her guardians be authorized and instructed by the court to enter into negotiations with the proper persons for the purpose of effectuating the tentative proposition based upon the family agreement referred to in the response and counter-petition, and in the event said proposition is made effective by the approval of courts having jurisdiction of the parties thereto and of the subject-matter thereof, to report the same to the court for its further consideration and action.

These are the only questions which were considered and decided by Judge Warlick.

I am of the opinion that there was no error in his decision of these questions, and that his judgment should be affirmed. I do not concur in the judgment of this Court, reversing the judgment of Judge Warlick, nor do I think that the questions of law involving the validity of the decree of the Superior Court of Forsyth County, and the will of the father of the infant, discussed and apparently decided by this Court, are presented by this appeal.