**HELVERING, Com'r of Internal Revenue, v.
SAFE DEPOSIT & TRUST CO. OF
BALTIMORE et al.**

No. 4750.

Circuit Court of Appeals, Fourth Circuit.

June 10, 1941.

308

Samuel O. Clark, Jr., Asst. Atty. Gen. (Sewall Key, Arthur A. Armstrong, and Richard H. Demuth, Sp. Assts. to Atty. Gen., on the brief), for petitioner.

Charles McH. Howard, of Baltimore, Md., for respondents.

Before PARKER, SOPER, and NORTHCOTT, Circuit Judges.

PARKER, Circuit Judge.

This is a petition by the Commissioner of Internal Revenue to review a decision of the Board of Tax Appeals with respect to estate tax alleged to be due by the estate of the late Zachary Smith Reynolds. The decision of the Board is reported in 42 B.T.A. 145. Many contentions pressed before the Board have been abandoned in the petition here. Only two questions are before us: (1) whether decedent had such an interest in the property embraced in trusts created by his father and mother as to bring that property within the provisions of sec. 302(a) of the Revenue Act of 1926, 44 Stat. 9, 26 U.S.C.A. Int.Rev.Acts, page 227; and (2) if not, whether his estate is taxable, under the principles laid down in Lyeth v. Hoey, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119, 119 A.L.R. 410, by reason of a settlement of litigation, under which his brothers and sisters received an interest in the trust property which he had attempted to give them by the void exercise of testamentary powers of appointment vested in him under the trusts.

On the first question, the facts are that decedent was the beneficiary of three trusts, one created under the will of his father in 1918, one by deed of trust executed by his mother in 1923, and one by will of his mother in 1924. Under the trust created by his father, a small portion only of the income from the trust property was to be paid to him until he arrived at the age of twenty-eight years, when the entire corpus of the property was to be turned over to him. Under the trusts created by his mother, he was to enjoy the income of the property for life, with certain restrictions as to payments to be made to him before attaining the age of twenty-eight. In the case of all three trusts he was given general testamentary powers of appointment with respect to the trust property; and, in all, there was a gift over, in default of the exercise of the power, to decedent's descendents, if any, or, if he had no descendents, to his brothers and sisters and their representatives per stirpes. Decedent died in the year 1932 before reaching the age of twenty-one years. He was domiciled in the state of North Carolina and under the laws of that state was incapable, because of his infancy, of exercising the testamentary powers of appointment vested in him. It is not contended that there was any valid exercise by him of such powers.

On the second question, the facts are that decedent did attempt to exercise the powers of appointment in favor of his brothers and sisters by will executed August 21, 1931. This will was void under the law of North Carolina and constituted no valid exercise of the powers. Decedent was twice married. He left surviving him

a child by the first marriage, and a child by the second marriage was born to him a few months after his death. A question arose as to the validity of the divorce dissolving the first marriage and this raised a question as to the legitimacy of the posthumous child and its capacity to take as a descendent. A question as to the right of the child of the first marriage to take as a descendent was raised because of a settlement entered into with the mother and guardian of the child at the time of the divorce. Litigation ensued in the North Carolina state courts (see In re Reynolds' Guardianship, 206 N.C. 276, 173 S.E. 789; Reynolds v. Reynolds, 208 N.C. 578, 182 S.E. 341), and a compromise was reached under which, after the payment of estate taxes to the state of North Carolina, 37½ per cent of the remainder was allotted to the child of the first marriage, 25 per cent to the child of the second marriage and 37½ per cent to the brothers and sisters of decedent to be held in trust for them pursuant to the terms of their father's will. It is this 37½ per cent of the estate which the Commissioner contends is subject to inheritance tax in any event under the principles laid down by the Supreme Court in Lyeth v. Hoey, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119, 119 A.L.R. 410. It is to be noted, however, that this portion of the estate did not pass to the brothers and sisters absolutely, as it would have done under the exercise of the powers of appointment, but was placed in trust for them under the will of their father as was provided by that will in case of death of decedent without issue and without exercise of the power.

■ The chief contention of the government is that the property embraced in all three trusts was property in which decedent had an interest at the time of his death and which was therefore subject to the estate tax under sec. 302(a) of the Revenue Act of 1926, ch. 27, 44 Stat. 9, which provides:

"Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

"(a) To the extent of the interest therein of the decedent at the time of his death".

The trouble with this contention is that upon his death decedent had no interest of any sort in the trust property. Under the will of his father he had the right to certain income until he became twenty-eight years of age, at which time he was to have turned over to him the corpus of the property theretofore held in trust for him; but the property was not to become his until he reached that age, and when he died without exercising the power of appointment vested in him with respect thereto, the property passed under the will of his father to persons designated in that will. Under the will and deed of trust of his mother he had the right during his life to the income of the property placed in trust, with certain restrictions upon the income's being paid over to him; but this property was never to become his, although he had general testamentary powers of appointment with regard thereto, and when he died without exercising the powers it passed under the will and deed of his mother to the persons designated by her to take in default of appointment. His death, therefore, terminated all interest that he had in the property embraced in all of the trusts and he had no interest therein of any sort which passed from him to another at his death. It is beside the point to say that he was to have the benefit of the property during his life time. This is true of any life estate; and no one would contend that a mere life estate subjects the life tenant to the estate tax. Nor is anything added by reason of the fact that the property embraced in the trust created by the father's will was to become the property of decedent upon his reaching the age of twenty-eight. This right was contingent upon his reaching that age; and, as he died before reaching it, the property never became his. Nor is anything added by reason of the fact that the persons designated to take in default of appointment were the natural objects of decedent's bounty. They were the natural objects of the bounty of his father and mother also; but the point of importance is that, in default of the exercise of the powers of appointment by him, they took not from or through him but under the wills of his father and mother and under the deed of his mother. United States v. Field, 255 U.S. 257, 41 S.Ct. 256, 65 L.Ed. 617, 18 A.L.R. 1461; Wachovia Bank & Trust Co. v. Doughton, 272 U.S. 567, 47 S.Ct. 202, 71 L.Ed. 413; Helvering v. Grinnell, 294 U.S. 153, 55 S.Ct. 354, 79 L.Ed. 825; Legg's Estate v. Commissioner, 4 Cir., 114 F.2d 760; Leser v. Burnet, 4 Cir., 46 F.2d 756.

■ Unless, therefore, a general power of appointment with respect to the prop-

erty is such an interest as subjects it to the provisions of section 302(a), decedent had no interest which would subject it to the estate tax. We think it clear that a general power of appointment is not such an interest. The question was before the Supreme Court in United States v. Field, supra, 255 U.S. 257, 41 S.Ct. 256, 258, 65 L.Ed. 617, 18 A.L.R. 1461. That decision dealt with provisions of the Revenue Act of 1916, which did not include the provision which appears as 302(f) of the Act of 1926, taxing the estate with respect to property passing under a general power of appointment. Estate tax was imposed by section 202 of the Act of 1916, 39 Stat. 777, which valued the estate of decedent "(a) To the extent of the interest therein of the decedent at the time of his death which after his death is subject to the payment of the charges against his estate and the expenses of its administration and is subject to distribution as part of his estate." Contention was made that when a general power of appointment is exercised, equity regards the property appointed as assets for the payment of debts, and that the property appointed should be treated as part of the estate for the purposes of the estate tax. The Supreme Court denied this contention on the ground that the property appointed was not the property of the donee at the time of his death, saying: "But the existence of the power does not of itself vest any estate in the donee. * * * And, whether the power be or be not exercised, the property that was subject to appointment is not subject to distribution as part of the estate of the donee. If there be no appointment, it goes according to the disposition of the donor. If there be an appointment to volunteers, then, subject to whatever charge creditors may have against it, it goes not to the next of kin or the legatees of the donee, but to his appointees under the power. It follows that the interest in question, not having been property of Mrs. Field at the time of her death, nor subject to distribution as part of her estate, was not taxable under clause (a)."

And we do not think that the authority of the Field case is in anywise weakened by reason of the fact that the language "which after his death is subject to the payment of the charges against his estate and the expenses of its administration and is subject to distribution as part of his estate" contained in the Act of 1916 was omitted from the general provision of 302 (a) in the Act of 1926. The purpose of this change in the law was stated in the report of the Ways and Means Committee as follows: "Under existing law the gross estate is determined by including the interest of the decedent at the time of his death in all classes of property which after his death is subject to the payment of the charges against his estate and the expenses of its administration and is subject to distribution as part of his estate. In the interest of certainty it is recommended that the limiting language above referred to shall be eliminated in the proposed bill, so that the gross estate shall include the entire interest of the decedent at the time of his death in all the property." House Reports, vol. 1, 69th Cong., 1st Sess. 1925-6, at p. 15; Senate Reports, vol. 1, 69th Cong., 1st Sess. 1925-6, at p. 7, etc. There is nothing in the language which would indicate any intention to include in the gross estate the value of property as to which a general power of appointment existed, whether exercised or not. And it is to be noted that the basis of the decision in the Field case was that the property there appointed was held not to have been the property of the donee at the time of her death, as well as not to have been subject to distribution as a part of her estate. In other words, the property appointed was held not to fall within the broader language of the section carried forward in succeeding statutes, and not merely not to fall within the limiting language which was omitted.

The inclusion in the Revenue Act of Feb. 24, 1919 of the provision imposing the tax with respect to property passing by exercise of a power of appointment shows very clearly that the general language of 202(a) of the Act of 1916 with respect to the inclusion of any interest which decedent might own in property at the time of his death was not supposed to embrace property subject to such power. As was pertinently said by the Supreme Court in the Field case: "It would have been easy for Congress to express a purpose to tax property passing under a general power of appointment exercised by a decedent had such a purpose existed; and none was expressed in the act under consideration. In that of February 24, 1919, which took its place, the section providing how the value of the gross estate of the decedent shall be determined contains a clause precisely to the point (section 402(e), 40 Stat. 1097): 'To the extent of any property passing under a general power of appointment ex-

ercised by the decedent (1) by will, or (2) by deed executed in contemplation of, or intended to take effect in possession or enjoyment at or after, his death, except,' etc. Its insertion indicates that Congress at least was doubtful whether the previous Act included property passing by appointment. See Matter of Miller, 110 N.Y. 216, 222, 18 N.E. 139; Matter of Harbeck, 161 N.Y. 211, 217, 218, 55 N.E. 850; United States v. Bashaw [8 Cir.], 50 F. 749, 754, 1 C.C.A. 653. The government contends that the amendment was made for the purpose of clarifying rather than extending the law as it stood, and cites a statement to that effect in the Report of the House Committee on Ways and Means (House Doc. No. 1267, p. 101, 65th Cong., 2d Sess.). It is evident, however, that this statement was based upon the interpretation of the act of 1916 adopted by the Treasury Department. The same report proceeded to declare (page 102) that 'the absence of a provision including property transferred by power of appointment makes it possible, by resorting to the creation of such a power, to effect two transfers of an estate with the payment of only one tax'; and this, together with the fact that the committee proposed that the law be amended, shows that the Treasury construction was not treated as a safe reliance."

It is to be noted that the question involved is, not whether Congress had the power to tax, as a part of a decedent's estate, property as to which he held a power of appointment whether exercised or not, but whether it was intended to exercise that power. It may be assumed that Congress has such power. Cf. Bullen v. Wisconsin, 240 U.S. 625, 36 S.Ct. 473, 60 L.Ed. 830; Saltonstall v. Saltonstall, 276 U.S. 260, 48 S.Ct. 225, 72 L.Ed. 565. But it by no means follows that Congress has attempted to exercise it. On the contrary, the language used in 302(a) is limited to the "interest" of decedent in the property; and as we have seen he has no interest in property with respect to which he holds a mere unexercised power of appointment. As said by Judge Patterson in Davis v. United States, D.C., 27 F.Supp. 698, 700, when dealing with the powers of a beneficiary of a trust, providing for survivorship, to alienate his interest during life and thus defeat the survivorship: "We may pass the point whether the power was one to sell an absolute interest or was merely one to sell the defeasible interests that the decedent himself had in the property, a

point on which the trust instruments are by no means clear. For even if the power of sale were a power over an undivided share outright, such a power is not an 'interest' within the meaning of section 302(a). That provision deals with property owned by a decedent and passing at death by will or intestacy. Subsequent provisions in section 302 deal with property over which a decedent had powers. See Porter v. Commissioner, 288 U.S. 436, 440, 441, 53 S.Ct. 451, 77 L.Ed. 880; United States v. Field, 255 U.S. 257, 41 S.Ct. 256, 65 L.Ed. 617, 18 A.L.R. 1461.''

Directly in point is Porter v. Commissioner, supra, 288 U.S. 436, 442, 53 S.Ct. 451, 453, 77 L.Ed. 880, where, in a case involving 302(d) of the Act of 1926, relating to transfers in trust with reservation of right of change in the transferor, it was argued that 302(d) was limited by the provision of 302(a) so that the amount taxable under (d) was only "the 'interest therein of the decedent at the time of his death.' " In answering this contention the Supreme Court said: "Subdivision (a) does not in any way refer to or purport to modify (d) and, in view of the familiar rule that tax laws are to be construed liberally in favor of taxpayers, it cannot be said that, if it stood alone, (a) *would extend to the transfers brought into the gross estate by (d)*. United States v. Field, supra, 264 of 255 U.S., 41 S.Ct. 256, 65 L.Ed. 617, 18 A.L.R. 1461. Moreover, Congress has progressively expanded the bases for such taxation. Comparison of section 302 with corresponding provisions of earlier acts warrants the conclusion that (d) is not a mere specification of something covered by (a), but that it covers something not included therein. Cf. Chase National Bank v. United States, 278 U.S. 327, 49 S.Ct. 126, 73 L.Ed. 405, 63 A.L.R. 388; Tyler v. United States, 281 U.S. 497, 50 S.Ct. 356, 74 L.Ed. 991, 69 A.L.R. 758; Gwinn v. Commissioner, 287 U.S. 224, 53 S.Ct. 157, 77 L. Ed. 270; Burnet v. Guggenheim, 288 U.S. 280, 53 S.Ct. 369, 77 L.Ed. 748." (Italics supplied.) If (a) would not extend to the transfers brought into the gross estate by (d), it is hard to see how it could extend to an unexercised power of appointment.

The argument that powers of appointment, whether exercised or not, should be held to be an interest included in the language of sec. 302(a), because Congress should be deemed to have exercised to the limit its power of taxation with respect to the succession of property, does not ac-

cord with the legislative history of section 302 and the subsections thereunder. In the original estate tax of 1916 this section contained two subsections in addition to the one here under consideration, which was there numbered 202(a). These dealt with transfers by the decedent in contemplation of death, with those intended to take effect in possession or enjoyment at or after death, and with interests held jointly or by the entirety. 39 Stat. 777. By the Act of Feb. 24, 1919 provision was made for the inclusion of dower and courtesy interests of a surviving spouse, for amounts receivable as insurance under policies taken out by the decedent upon his own life, and for property passing under the exercise of a general power of appointment. 40 Stat. 1097. In 1924 the reservation by decedent of a power to revoke, either alone or in conjunction with any person, or the relinquishment of such a power in contemplation of death was made taxable, and the subsections of 302, with the exception of (a), were expressly made retroactive. 43 Stat. 304, 26 U.S.C.A. Int. Rev.Acts, page 67. The Act of 1926 provided that transfers for less than a full consideration, made within two years of death, in excess of $5,000 to any one person, should be deemed to have been made in contemplation of death to the extent of such excess, and amended 302(a) to its present form by dropping the requirements that the interest be subject to charges against the estate and subject to distribution. 44 Stat. 70, 26 U.S.C.A. Int.Rev.Acts, page 227. This is the only change that has been made in what is now section 302(a) since its enactment in 1916.

In 1931, to meet the decision in May v. Heiner, 281 U.S. 238, 50 S.Ct. 286, 74 L.Ed. 826, 67 A.L.R. 1244, an estate reserved for life or for any period not ending prior to the death of the transferor was expressly made taxable. 46 Stat. 1516, 26 U.S. C.A. Int.Rev.Acts, page 227. The Act of 1932 clarified 302(c) so as to specifically cover estates retained by a transferor for "any period not ascertainable without reference to his death", amended 302(f) to include the exercise of powers of appointment in which the donee retained for his life, or for any period not ascertainable without reference to his death, the right to income or possession of property or to alter the distribution of income or enjoyment of possession. 47 Stat. 279, § 803(a, b), 26 U.S.C.A. Int.Rev.Acts, pages 641, 642. By the Act of 1934 real property situated outside of the United States was excepted and provision was made that "the power to alter, amend, or revoke shall be considered to exist on the date of the decedent's death even though the exercise of the power is subject to a precedent giving of notice or even though the alteration, amendment, or revocation takes effect only on the expiration of a stated period after the exercise". 48 Stat. 752, § 401, 26 U.S.C.A. Int.Rev.Acts, page 759. In 1936, to meet the decision in White v. Poor, 296 U.S. 98, 56 S.Ct. 66, 80 L.Ed. 80, reserved powers were made taxable "in whatever capacity exercisable", and "without regard to when or from what source the decedent acquired such power". 49. Stat. 1744, § 805, 26 U.S.C.A. Int.Rev.Acts, page 957.

From this brief resume of the history of section 302 and its subsections, it is clear that Congress has not regarded the general language of subsection (a) as extending to the limit of its powers to tax with respect to the succession of property, but, in the language of Judge Patterson in Davis v. United States, supra, has treated that subsection as dealing "with property owned by a decedent and passing at death by will or intestacy" and has added or amended other subsections to reach other property taxable under its power to tax the right of succession. It is worthy of note too that no such interpretation has been placed upon the Act in the Treasury Regulations relating thereto; and no provision whatever is made for inclusion of property subject to an unexercised power of appointment. See Articles 13 and 24. Nor has any case so held, notwithstanding fifteen years. have elapsed since the language of subsection (a) was put in its present general form. On the contrary, the courts have been at pains to consider whether property passed under a general power or not so as to be taxable under section 302(f), a consideration which would have been absolutely unnecessary if the estate were taxable under 302(a) because of the mere existence of a general power whether exercised or not. Cf. Morgan v. Com'r, 309 U.S. 78, 60 S.Ct. 424, 84 L.Ed. 585; Helvering v. Grinnell, 294 U.S. 153, 55 S.Ct. 354, 79 L.Ed. 825; Legg's Estate v. Com'r, 4 Cir., 114 F.2d 760; Rothensies v. Fidelity Trust Co., 3 Cir., 112 F.2d 758.

We recognize, of course, that the specific provisions following subsection (a) are not necessarily inconsistent with an intention to give to that subsection a scope

broad enough to cover the matters covered by these specific provisions. Helvering v. Clifford 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788. But it is hardly thinkable that Congress would have passed subsection (f) to cover property passing under the exercise of a general power of appointment if property subject to such a power, whether exercised or not, was already embraced by subsection (a). And it is hardly probable that if such had been the intention of Congress, it would have been overlooked for so many years, by the Treasury, by the courts and by Congress itself. As was well said in brief of appellee's counsel: "If it had been the intention of Congress, in repealing the additional requirements of section 302(a), to tax as part of the estate of a decedent all property over which he had a general power of testamentary appointment, whether exercised or not, it was to say the least misleading to re-enact at the same time section 302(f) specifically providing for the case of the exercise of a general power of appointment, if Congress intended by the change made in section 302(a) to make all such powers taxable whether exercised or not; so misleading in fact that it has deceived everybody for fifteen years. Had Congress intended to cover the non-exercise, as well as the exercise of powers of appointment, nothing would have been easier than to have so provided in clear terms."

The petitioner says in his brief: "Perhaps no single one of the rights which the decedent had with respect to the property would by itself be sufficient to constitute an 'interest' in the property within the meaning of section 302(a). But clearly the whole bundle of rights which he possessed gave him such substantial dominion and control over the property that, for estate tax purposes, he must be treated as its beneficial owner." The answer to this is that in the "whole bundle of rights" there was not a single one which constituted an interest in the property at the time of decedent's death; and it is only where such interest can be found that the property can be included in the gross estate for the purpose of the tax. Petitioner argues that we should consider other than such interests in the property as are recognized by state law and that decedent had substantial attributes of ownership in the property which subject it to taxation under section 302(a) in that he had the right to a portion of the income therefrom, with the expectation of receiving the corpus of the trust created by his father upon attaining the age of twenty-

eight, with general powers of appointment and with provisions in the instruments creating the trusts that, in default of appointment, the property should go to the natural objects of his bounty. But as we have seen, none of these things amounted to an interest in the property in decedent at the time of his death. In determining what constitutes such interest, we are not at liberty to indulge in general speculation but must look to the law of the state under which the property is held; for the rights in property which we may consider in determining taxability by the federal government are fixed and determined by that law. As said in Morgan v. Commissioner, 309 U.S. 78, 80, 60 S.Ct. 424, 426, 84 L.Ed. 585: "State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed."

And we are not impressed with the arguments that 302(a) covers all cases where, by reason of decedent's death, the economic benefits of property shift, or that the estate tax law contemplates that there shall always be some person living whose death will furnish occasion for the incidence of the estate tax. The case of an estate for life with remainder contingent upon a contingency with a double aspect is a sufficient refutation of both arguments. Thus in the case of a limitation to A for life with remainder to B if he survives A and, if not, to C, there is a shifting of the economic benefit of the property on A's death and there is no one living during the lifetime of A whose death would furnish an occasion for the incidence of the estate tax. No one would contend that an estate tax would be assessable by reason of A's death and the vesting of the contingent remainder. See Treasury Regulations 80, Article 13.

Coming to the second question, it is clear that the property that was placed in trust for the brothers and sisters of decedent under the compromise agreement did not pass by the exercise of the power of appointment and consequently was not taxable under sec. 302(f). As said in Helvering v. Grinnell, 294 U.S. 153, 155, 55 S.Ct. 354, 79 L.Ed. 825: "The crucial words are 'property passing under a general power of appointment exercised by the decedent by will.' Analysis of this clause discloses three distinct requisites: (1) The existence of a general power of appointment; (2) an exercise of that power by the decedent by will; and (3) the passing of the property in virtue of such exercise."

There can be no question, we think, but that the attempted exercise of the power of appointment by decedent was void. In re Reynolds' Guardianship, 206 N.C. 276, 173 S.E. 789, 796, 797; Reynolds v. Reynolds, 208 N.C. 578, 182 S.E. 341. We do not understand, indeed, that any contention is made to the contrary. It was adjudged to be void by decree of the Circuit Court of Baltimore City in a suit brought to confirm the compromise agreed upon between the parties, in the following language: "3. That the defendants who are named as legatees in the paper writing heretofore filed for probate in the office of the Surrogate of New York County, in the State of New York, as an alleged last will and testament of Zachary Smith Reynolds, deceased, an authenticated copy of which was filed with the plaintiff's bill of complaint as plaintiff's exhibit H and was filed as part of the testimony in this cause, are not entitled to receive any allowance, share, or payment out of either the principal or income of any of said trust estates, now in the hands of the plaintiff as trustee; because said paper writing or alleged will was not effective or operative to dispose of or affect any of the property or estate held by the plaintiff as trustee under any of said instruments; but was altogether void and without effect as an exercise of any power of appointment or disposition which the said Zachary Smith Reynolds would have possessed or had, if he had attained lawful age at the time of his death; and therefore no allowance or payment shall be made to anyone as claiming under said alleged will, out of the principal or income of the estate and property held by the plaintiff as trustee under any of the settlements referred to in said bill of complaint."

It must be remembered that the estate tax is imposed not upon those who receive shares of the estate, but upon the estate itself (Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647); and the inquiry is not what has been received by devisees, distributees or beneficiaries of the exercise of powers, but what was in the gross estate of decedent that passed from him at death or what passed by reason of his exercise of a general power of appointment. As nothing passed by the exercise of the power, since it was not exercised, no tax is assessable with respect to it. The compromise agreement was a transaction occurring long after the death of decedent. It was based upon various controversies including those relating to the effect of the settlement upon the child of the first marriage, the validity of the divorce and the legitimacy of the child of the second marriage. It recognized the invalidity of decedent's will as an exercise of the power of appointment; and the portion of the estate allotted to the brothers and sisters was placed in the trust provided by the will of the father, as was provided in case of default of issue and exercise of the power. Under such circumstances we think that the Board was correct in holding that nothing passed under the exercise of the power and that the doctrine of Lyeth v. Hoey 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119, 119 A.L.R. 410 has no application.

Lyeth v. Hoey decided that a share of a willed estate acquired through a will contest by one who would have taken by inheritance was acquired by inheritance and was not subject to income tax. In that case the share while acquired by compromise, was acquired by reason of the status of the contestant as an heir. Here the void will of decedent conferred no status upon his brothers and sisters which would characterize their share of the compromise settlement as passing under the void power. They did indeed occupy a status with respect to the property under the trusts created by their father and mother; and it is significant that the compromise both recognized the invalidity of the attempted exercise of the power of appointment by decedent's will and placed the property allotted by the compromise to the brothers and sisters under the terms of the trust created by the will of their father. In other words, the share acquired by the brothers and sisters under the compromise came to them as beneficiaries under the trusts created by their father and mother, and not as heirs of their brother, or beneficiaries under his will. For the Board to attempt to appraise the part which the void will of decedent played in arriving at the compromise would be for it to embark upon an enterprise of pure speculation and to assess taxes upon the basis of a passing of property by an appointment, when there was admittedly no such passing. In Lyeth v. Hoey, the property passed by inheritance if the will was set aside, and the compromise was a recognition of the right to take by inheritance; the compromise here was no recognition of the right to take by appointment, but expressly repudiated that right.

Very much in point is the decision in Robbins v. Commissioner, 1 Cir., 111 F.2d 828, 832, cited by the Board. In that case, the will of a testator authorized his daughter to appoint by will to Amherst College a sum up to but not exceeding $250,000 and, in default of the exercise of the power, directed that at her death trustees under the will pay that amount to the college. In a controversy arising among the devisees and legatees following the death of testator, a compromise was agreed upon under which $250,000 was to be paid to the college at the termination of the life estate in the property of two daughters of testator. It was sought to deduct this amount, decreased by the value of the life estates, from the gross value of the estate in computing the estate tax, on the theory that it was a bequest to charity. The deduction was disallowed on the ground that the amount to be paid the college was the result of compromise occurring after testator's death and could not affect the gross of the taxable estate, which should be computed as of that time. Distinguishing Lyeth v. Hoey, the court said: "It held [in Lyeth v. Hoey] that what the petitioner 'got from the estate came to him because he was heir, the compromise serving to remove pro tanto the impediment to his inheritance' and that the exemption applied. It may be that, by the reasoning of Lyeth v. Hoey, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119, 119 A.L.R. 410, whatever is received by Amherst under the compromise agreement would be considered as 'acquired by * * bequest' within the meaning of Section 22(b) (3), and thus exempt from income taxation. The fact that Amherst was named as a contingent legatee in the testator's will gave it a standing to participate in the compromise agreement. Perhaps 'acquired by * * * bequest' in Section 22(b) (3) may be read to mean acquired as a proximate result of the bequest to Amherst in the testator's will. It would not follow from this, however, that the gift which Amherst received under the compromise agreement should itself be regarded as the gift of the testator and a 'bequest' within the meaning of Section 303(a) (3). The purposes of the two sections of the Revenue Act are not identical. As we have pointed out, the estate tax is based upon the value of the interest which ceased at the time of the testator's death. 'Congress was thus looking at the subject from the standpoint of the testator and not from the immediate point of view of the beneficiaries.' Young Men's Christian Association v. Davis, 264 U.S. 47, 50, 44 S.Ct. 291, 292, 68 L.Ed. 558. * * * it is clear that whatever rights Amherst College has now come to it through the compromise agreement and not under the will of the testator. The compromise agreement is not the will of the testator. Obviously, to allow a deduction of the gift of $250,000 to Amherst College, or one-third of the principal of the trust fund, whichever is the lesser upon the death of the survivor of Bertha Allen Logan and Louise Allen Atkins, is to allow a deduction not under the will of the testator but under the compromise agreement."

Such cases as Lyeth v. Hoey, supra, and Magruder v. Segebade, 4 Cir., 94 F.2d 177, lay down the principle that what is received by compromise, if it is a part of the very thing claimed, is of the same character for tax purposes as the claim which is compromised. Where, however, it is not of the same character, the principle does not apply. White v. Thomas, 5 Cir., 116 F.2d 147, certiorari denied, May 26, 1941, 61 S.Ct. 1098, 85 L.Ed. ——. Here the estate in property received by the brothers and sisters of decedent under the compromise was of a different character from what they would have received under the power of appointment and did not pass under the power by reason of the compromise. See also Housman v. Com'r, 2 Cir., 105 F.2d 973. As said in Old Colony Trust Co. v. Com'r, 1 Cir., 73 F.2d 970, 971, "The agreement which the parties made in settlement of the controversy does not affect the rights of the government under the taxing statute."

For the reasons stated the decision of the Board will be affirmed.

Affirmed.