The **MERCHANTS NATIONAL BANK OF MOBILE, As Executor under the Will of Nettie F. Turner, Deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. 1751.**

United States District Court
S. D. Alabama, S. D.
Nov. 21, 1957.

828

J. Manson Murray, of Vickers, Riis & Murray, Mobile, Ala., for plaintiff.

Ralph Kennamer, U. S. Atty., Mobile, Ala., for defendant.

THOMAS, District Judge.

This is a suit for the recovery of estate taxes paid by plaintiff as executor for decedent's estate. It has been submitted to the court on the pleadings, stipulations of fact, and arguments and briefs of counsel for the respective parties. The questions presented for determination are two:

(a) Were certain general testamentary powers of appointment, possessed by the decedent at the time of her death, created before or after October 21, 1942?[1]

(b) If created before October 21, 1942, does the residuary clause in decedent's will exercise such powers of appointment?

[1]. Section 811(f), Int.Rev.Code of 1939, 26 U.S.C.A. § 811(f), as amended June

## Findings of Fact

1. Nettie F. Turner died testate on the 12th day of December, 1951, and on January 8, 1952, The Merchants National Bank of Mobile was duly appointed executor of said estate.

2. Horace Samford Turner, husband of Nettie F. Turner, had executed

(i) an inter vivos trust on December 31, 1935, by the terms of which the said Nettie F. Turner was granted a general power of appointment, contingent on her surviving her husband and exercisable solely by will, over the net proceeds of such trust, which trust at the time of her death was valued at $56,823.40, and

(ii) a revocable life insurance trust on July 15, 1931, which he modified and supplemented on July 17, 1942, and by the terms of which Nettie F. Turner was granted a general power of appointment over a portion of such trust, which at the time of her death was valued at $5,026.01.

3. Horace Samford Turner died August 21, 1946, without having modified either the inter vivos trust or the revocable life insurance trust after October 21, 1942.

4. Nettie F. Turner survived her husband and left a last will and testament which was duly probated in Mobile County, Alabama. This will was executed July 17, 1942. A codicil added August 31, 1945, liberalized the provisions for a daughter and confirmed the will in all other respects. No mention was made in either instrument of the powers of appointment, still contingent under the trust agreements. The will, however, contained a residuary clause, which placed the entire residuary estate in trust to be held, first, for the benefit of her husband, Horace S. Turner, and then for the benefit of her children.

5. On March 9, 1953, plaintiff filed the estate tax return required under the laws of the United States for said estate, showing a tax liability to the United

28, 1951. Powers of Appointment Act of 1951, 65 Stat. 91.

States of $50.33, which said sum was paid on that day.

6. The Collector of Internal Revenue, claiming that the proceeds (1) of the inter vivos trust valued at $56,823.40, (2) of a portion of said life insurance trust valued at $5,026.01, and (3) of a refund of income tax in the amount of $754.18, were includable in the gross estate of decedent, assessed additional estate taxes of $10,453.86 tax and $1,820.12 interest, aggregating the sum of $12,273.98, against the executor. The Collector included the trust funds in decedent's gross estate on the theory that the powers of appointment given to decedent by her husband were exercised by decedent through the residuary clause of her will. (It is further contended by defendant that, even if it be held these powers were not exercised, they were, in fact, not created prior to October 21, 1942, with the execution of the trust instruments, but were created at the death of the husband in August 1946, and therefore taxable whether exercised or not.)

7. The executor, plaintiff herein, paid the assesment, filed a timely claim for refund, and after waiting more than six months from the filing of the claim for refund, brought suit for the recovery of the assessed deficiency (excluding the tax on the income tax refund).

8. Plaintiff did not claim in its complaint filed in this cause or at any time thereafter that the Collector erroneously included the proceeds from the income tax refund in the gross estate of the decedent.

### Conclusions of Law

#### I

This court has jurisdiction of this cause.

#### II

The powers of appointment contained in the inter vivos trust and the life insurance trust were created prior to October 21, 1942.

Recently this court had occasion to state, "Statutes levying taxes are not to be extended by implication beyond the clear import of the language used, and in case of doubt are construed most strongly against the government.[2]" Beginning with the enactment of the Revenue Act of 1942,[3] which radically altered the taxing provisions as to estate and gift taxes, Congress has shown a consistent concern for the protection of the donees of powers established by instruments executed prior to the date of the enactment of the 1942 Act (October 21, 1942). The Powers of Appointment Act of 1951 (see Footnote 1.), which amended Section 811(f) of the Internal Revenue Code of 1939, as previously amended, (and the provisions of which were in force and effect at the time of the death of the decedent in December 1951) contains the following provision:

"(b) Date of Creation of Power.—For the purposes of this section a power of appointment created by a will executed on or before October 21, 1942, shall be considered a power created on or before such date, if the person executing such will dies before July 1, 1949, without having republished such will, by codicil or otherwise, after October 21, 1942." [4]

The quoted provision is a clear expression that Congress intended that powers of appointment established by a will executed on or before October 21, 1942, shall be deemed to have been created at the date of the execution of the will for the purpose of Section 811(f), even though such powers may have remained contingent and revocable until June 30, 1949. This provision effectively refutes the contention of the defendant that, for purposes of Section 811(f), a power is not to be deemed created until it is capable of being exercised.

---

2. Crolich v. United States, D.C., 144 F. Supp. 109, 111.

3. 56 Stat. 798.

4. This provision was carried over from Section 2 of Act June 12, 1948, c. 459, 62 Stat. 388, and is also found in Internal Revenue Code of 1954, Section 2514(f).

■ A power created by the terms of a will is, from the date of the execution of the will to the death of the testator, both revocable and contingent. No right or interest exists by virtue of a will until the death of the testator, for a will is an ambulatory instrument. Inter vivos trusts present different practical and legal propositions. Trust agreements give rise to interests and rights at the date of the execution of the instrument. Such rights are vested and established rights that may be afforded legal protection. The execution of the trust instrument brings them into being, even though they may be defeated by the failure of an express contingency, or the effectual exercise of the power is suspended until the happening of a future event. It is the instrument and not the event which creates the power; without the instrument, the event could not effect the power. The execution of the trust instrument also brings into play the question of the application of the taxing statutes.

How then can the gift of a power of appointment ultimately received through a trust instrument executed before October 21, 1942,—even though the gift may have been revocable and contingent under the terms of the trust—be held to have been any less created at the date of the execution of the trust than a similar gift of power received by virtue of a will executed prior to October 21, 1942?[5]

The cases relied upon by the government (which hold to the effect that a conditional or contingent power does not exist until the condition or contingency has occurred) are based on concepts of law pertaining to real property, which concepts have been held not to apply to taxing statutes.[6]

## III

■ The question of whether or not the will of Nettie F. Turner exercised the powers of appointment contained in the inter vivos trust and the life insurance trust is to be decided in accordance with the laws of the State of Alabama.

## IV

■ The last will and testament of Nettie F. Turner construed in accordance with the laws of the State of Alabama, failed to exercise the powers of appointment created by the trusts.[7] The will made no mention of the exercise of the powers of appointment, but placed the residuary estate of the decedent in trust, first, for the benefit of her husband (who must necessarily have been dead in order for the decedent to exercise the powers of appointment under the terms of the trust agreements).

## V

■ Where there is no reference in the will to the power, or to the property which is the subject matter thereof, and the will is fully operative without the aid of the power, a general devise or bequest will not operate as an execution of the power.[8]

Judgment will be entered in accordance herewith.

5. That the end result of the Powers of Appointment Act of 1951 might, for tax purposes, be somewhat unfavorable to the government as a result of the protection afforded donees of powers created before 1942, was recognized in the Senate report on the bill. U.S.Code Congressional and Administrative Service, 82nd Cong. First Session, 1951, Vol. 2, p. 1530, et seq.

6. Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604.

7. Cramton v. Rutledge, 157 Ala. 141, 47 So. 214; Rice v. Park, 223 Ala. 317, 135 So. 472.

8. 41 Am.Jur. 839; 72 C.J.S. Powers § 40, p. 445, and cases cited therein.