UNITED STATES of America,
Appellant,

v.

The MERCHANTS NATIONAL BANK OF MOBILE, As Executor under the will of Nettie F. Turner, deceased, Appellee.

No. 17197.

United States Court of Appeals Fifth Circuit.

Nov. 26, 1958.

Gilbert E. Andrews, Jr., Melva M. Graney, Lee A. Jackson, Dept. of Justice, Washington, D. C., Charles K. Rice, Asst. Atty. Gen., Ralph Kennamer, U. S. Atty., Mobile, Ala., for appellant.

J. Manson Murray, Mobile, Ala. (Vickers, Riis, Murray & Curran, Mobile, Ala., of counsel), for appellee

Before RIVES, BROWN, and WISDOM, Circuit Judges.

1. Internal Revenue Code of 1939:
"§ 811. *Gross estate*
"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—
"(a) *Decedent's Interest.* To the extent of the interest therein of the decedent at the time of his death;
       *       *       *       *       *
"(f) [as amended by Sec. 403(a), Revenue Act of 1942, c. 619, 56 Stat. 798, and Sec. 2(a), Powers of Appointment Act of 1951, c. 165, 65 Stat. 91] *Powers of Appointment.*
"(1) *Property with respect to which decedent exercises a general power of appointment created on or before October 21, 1942.* To the extent of any property with respect to which a general power of appointment created on or before October 21, 1942, is exercised by the decedent (1) by will or (2) by a disposition which is of such nature that if it were a transfer of property owned by the decedent such property would be includible in the decedent's gross estate under subsection (c) or (d); but the failure to exercise such a power or the complete release of such a power shall not be deemed an exercise thereof.
"If before November 1, 1951, or within the time limited by paragraph (2) of section 403(d) of the Revenue Act of 1942, as amended, in cases to which such

RIVES, Circuit Judge.

This case concerns liability for federal estate taxes. The date of death of the decedent, Nettie F. Turner, was December 12, 1951. Her husband, Horace S. Turner, had died on August 21, 1946. At her death, the decedent possessed general powers of appointment under two separate trust instruments executed by her husband. The broad question is whether the value of the appointive property is includible in her gross estate under Section 811(f) of the Internal Revenue Code of 1939.[1]

On December 31, 1935, an inter vivos trust agreement was executed by Horace S. Turner to The Merchants National Bank of Mobile, as trustee. The net income from the trust property was to be paid to his wife, the decedent here. A son, Horace S. Turner, Jr., was given the

paragraph is applicable, a general power of appointment created on or before October 21, 1942, shall have been partially released so that it is no longer a general power of appointment, the subsequent exercise of such power shall not be deemed to be the exercise of a general power of appointment.
"(2) *Powers created after October 21, 1942.* To the extent of any property with respect to which the decedent has at the time of his death a general power of appointment created after October 21, 1942, or with respect to which the decedent has at any time exercised or released such a power of appointment by a disposition which is of such nature that if it were a transfer of property owned by the decedent, such property would be includible in the decedent's gross estate under subsection (c) or (d). A disclaimer or renunciation of such a power of appointment shall not be deemed a release of such power.
"For the purposes of this paragraph (2) the power of appointment shall be considered to exist on the date of the decedent's death even though the exercise of the power is subject to a precedent giving of notice or even though the exercise of the power takes effect only on the expiration of a stated period after its exercise, whether or not on or before the date of the decedent's death notice has been given or the power has been exercised.  *  *  *"
26 U.S.C. 1952 ed., § 811.

power to revoke the trust at any time prior to his father's death, in which event the trust property was to revert to the trustor. A like power was reserved to other sons in the event Horace, Jr. should predecease his father. If the power of revocation had not been exercised prior to the death of Horace S. Turner, and if his wife survived him, then she might dispose of the trust property by will. If, however, the wife predeceased her husband or failed to dispose of the trust property by will, then separate trusts were provided for the children of Horace S. Turner. When Horace S. Turner died, the power of revocation had not been exercised. Accordingly, at the time of her death, the decedent possessed a general power of appointment over the trust property, then of the value of $56,823.40.

On July 15, 1931, Horace S. Turner transferred to The Merchants National Bank of Mobile, as Trustee, various insurance policies on his life. The last modification of the trust took place on July 17, 1942. The trustor reserved the unconditional right to terminate the trust, but died without having exercised that right. Upon the death of the trustor, the trustee was to collect the proceeds of the various life insurance policies and hold them in trust for the benefit of his wife and his children. Of the total proceeds collected, $10,000 was to be held in trust for the decedent, the income therefrom to be paid to her for life. The decedent was also authorized to withdraw her share of the trust and was given the general power to dispose of her share by will. At the time of the decedent's death, the portion of the trust over which she had a testamentary power of appointment had a value of $5,026.01.

Decedent executed her will on July 17, 1942, and a codicil thereto on August 31, 1945. After making certain specific bequests, the will provided in pertinent part as follows:

"Item Three.

"I give, devise and bequeath to The Merchants National Bank of Mobile, Alabama, all of my property, of whatsoever nature or kind, real, personal or mixed, howsoever situate, including every interest in property that I may now possess, except the property disposed of in Item Two hereof.

"But this devise is made in trust for the following purposes, to-wit:
" * * *.

"(a) So long as my husband, Horace S. Turner shall live, the Trustee shall, each three months, pay to him the income from my said estate.

"(b) Should my husband, Horace S. Turner, predecease me, then at my death, or if my husband, Horace S. Turner should survive me, then at his death, I direct that my estate be equally divided between my children, and this date shall be referred to hereinafter as 'the date for division', and the respective share of each child shall be held by my Trustee as a separate trust fund to be held, managed, controlled and finally disposed of, both as to income and principal, according to the terms and conditions hereinafter set forth.
* * *."

Under paragraph (1) of Section 811 (f), if the power was created on or before October 21, 1942, the value of the appointive property is includible in the decedent's gross estate only if the power was exercised by the decedent by will or by a disposition which would be taxable under Section 811(c). Under paragraph (2), if the power was created after October 21, 1942, the mere possession of the power at death (regardless of whether it was exercised) requires the inclusion of the value of the appointive property in the decedent's gross estate.

The district court held that all of the powers of appointment were *"created on or before October 21, 1942"* within the meaning of Section 811(f) (1) of the Internal Revenue Code of 1939 [footnote 1, supra], and that the powers of appointment were not exercised in the decedent's will.[2] From such holdings it

2. Its opinion is reported at 156 F.Supp. 827.

followed that the value of none of the appointive property is includible in the decedent's gross estate under Section 811(f) [footnote 1, supra]. We are called on now to review those holdings.

The trust instruments were all executed before October 21, 1942. However, on that critical date, and until her husband died on October 21, 1946, the decedent's powers of appointment were conditioned on her surviving her husband and upon the trusts not being revoked during her husband's lifetime. Does the existence of powers of appointment so conditioned meet the statutory requirement that they be "created on or before October 21, 1942"?

Appellant, insisting that the question is answered by the plain language of the statute, makes the following argument in brief:

> " * * * The reference in Section 811(f) (1) is to a *general power of appointment* created on or before October 21, 1942,' and the reference in Section 811(f) (2) is to a *general power of appointment* created after October 21, 1942' (italics supplied). A 'general power of appointment' is defined in Section 811(f) (3) as meaning 'a power which *is exercisable* in favor of the decedent, his estate, his creditors, or the creditors of his estate' with certain exceptions (Italics supplied.)"

■ We think that the definition of a "general power of appointment" was meant simply to distinguish such a power from a special or limited power of appointment. The latter had been taxable under the 1942 Act, but was no longer taxable under the 1951 Act. In order to have uniformity of operation of the tax throughout the Country, it was necessary to provide one standard rather than to refer to the laws of the several states to determine what type of power was taxable. Impliedly, the definition referred to the incidence of the tax.

■ Undoubtedly, at or before the time of the taxable event, that is, at or before the death of the decedent, the power must be exercisable [3] in order for its mere possession to be taxable, for Section 811(f) (2) states that the value of the gross estate of a decedent includes the value at the time of death "to the extent of any property with respect to which the decedent *has at the time of his death* a general power of appointment created after October 21, 1942 * * *." (Emphasis supplied.) If the power of appointment is exercisable at the time of death, it is not material that it was theretofore subject to certain conditions. For example, in Johnstone v. Commissioner of Internal Revenue, 9 Cir., 1935, 76 F.2d 55, 57, the decedent could not have exercised the power if he had left issue surviving. He died without issue, and the court said: "The contingency which would have prevented his exercise of the power did not happen, and decedent was entitled to exercise the general power of appointment given him in the several trust agreements." On the other hand, if the power is conditioned upon an event which had not occurred at the time of the decedent's death, the appointive property is not taxable as a part of the decedent's estate. Cf. Jennings v. Smith, 2 Cir., 1947, 161 F.2d 74, 77. Likewise, if the power of appointment is exercisable at the time of death, it is immaterial that, because of certain contingencies, the property may never be distributed under the power. Fidelity-Philadelphia Trust Co. v. Rothensies, 1945, 324 U.S. 108, 109, 111, 112, 65 S.Ct. 508, 89 L.Ed. 782. If exercisable at the time of death, there is that essential control over the property,[4] and shifting of the

3. It is to be noted that comparatively simple words are used in the statute, for example, "exercisable," probably in an effort to avoid the "elusive and subtle casuistries" of the law of property. Helvering v. Hallock, 1940, 309 U.S. 106, 118, 60 S.Ct. 444, 450, 84 L.Ed. 604.

4. Corliss v. Bowers, 1930, 281 U.S. 376, 50 S.Ct. 336, 74 L.Ed. 916; Tyler v. United States, 1930, 281 U.S. 497, 50 S.Ct. 356, 74 L.Ed. 991.

economic benefits [5] to make the appointive property taxable as a part of the decedent's estate.

Clearly enough, then, at the time of the incidence of the tax a general power of attorney must be exercisable. The verb and phrase used in reference to that moment, "has at the time of his death," are definite in denoting one precise instant of time. On the other hand, "created on or before October 21, 1942" connotes some idea of the past and of the future.

The fact that a general power of appointment must be exercisable at the time of the decedent's death does not prevent the tracing of its creation back to a time before it became exercisable. It is said that Athena sprang full-grown from the brain of Zeus, but not every power is exercisable when the instrument from which it is derived first becomes effective. "Create" ordinarily implies going back to the very beginning of a thing, as for example, "God *created* the heaven and the earth," Genesis, c. 1. It may well be argued, we think, that these general powers of appointment had their beginning, were "created", for a long while before they became exercisable.

In brief, then, we do not find that the language of the statute furnishes a definite and certain answer to the question,[6] and we must consider the history and purposes of Section 811(f), and more particularly of the critical date provision, "created on or before October 21, 1942."

Before the 1942 Revenue Act, the effective date of which was October 21, 1942, only the exercise of a power of appointment was taxable. The taxation of the mere possession of unexercised powers was new to the federal tax system.

Further, only the exercise of a general power of appointment was taxable before the 1942 Act. That Act taxed the exercise of certain special or limited powers of appointment as well as the mere possession of unexercised powers. The 1942 Act applied to powers created before as well as after its enactment. It provided a short period, that is, up to January 1, 1943, for the release of pre-existing powers without tax liability. That period was repeatedly extended up to July 1, 1951, at which time the Powers of Appointment Act of 1951 became effective. The Senate Report stating the legislative history of that Act,[7] shows that, with an exception not now pertinent, " * * * the intent of the bill is to restore the law regarding preexisting powers as it existed prior to the 1942 act"; that "in 1942 there were in existence a great many powers which had been created years before, *in reliance on the law as it then existed*" (emphasis supplied). The statement of legislative history continues:

"Experience with the practical application of the provisions of the 1942 act to preexisting powers has demonstrated that the pre-1942 law should be restored as to those powers, for the above and other reasons, among which are the following: *The impracticability of reviewing all wills and trust agreements already in force in 1942,* in order to discover whether they did or did not create powers which might be taxable under the new law; the fact that many such powers will not be discovered until it is too late for the donees to do anything about them; the fact that often such powers are not legally releasable, and in many cases where the power is legally releasable

---

5. Burnet v. Guggenheim, 1933, 288 U.S. 280, 53 S.Ct. 369, 77 L.Ed. 748; Estate of Sanford v. Commissioner, 1939, 308 U.S. 39, 43, 60 S.Ct. 51, 84 L.Ed. 20.

6. The administrative interpretations of Section 811(f) do not appear to have been entirely consistent on the question. Compare Rev.Rul. 278, 1953-2 Cum.Bull.

266, with the several examples given under Section 20.2041-1(e) headed "Time of Creation of Power" of Treasury Regulations on Estate Taxes (1954 Code), Fed.Reg., June 24, 1958, p. 4561.

7. U.S.Code, Cong. and Adm.Serv., Vol. 2, 82nd Cong., First Sess.1951, pp. 1530, 1531, 1532.

the donee (usually a trustee) feels under a moral obligation not to release it, or the release would seriously impair the arrangements made by the creator of the power for the benefit and protection of his family; powers will be released in most cases where it is possible to do so; and application of a new statute to pre-existing powers will tend to promote litigation. Little or no revenue will accrue to the Government, and such as is received will come from *the unwary* or those who are powerless to help themselves." (Emphasis supplied.)

From the legislative history of the Act we thus see that Congress was concerned with avoiding a hardship on the unwary, on those taxpayers whose lawyers had relied on the law in existence when the instruments were drafted and who had failed thereafter to review the trust agreements.

The concern of Congress for the unwary is further evidenced by Section 2 of the Joint Resolution of June 12, 1948, c. 459, 62 Stat. 387, 26 U.S.C.A. § 811 note, with respect to powers of appointment in wills. The following similar provision was made applicable to Section 811(f) by Section 2(b) of the Powers of Appointment Act of 1951, c. 165, 65 Stat. 91, 26 U.S.C.A. § 811 note.

"*Date of Creation of Power.* For the purposes of this section, a power of appointment created by a will executed on or before October 21, 1942, shall be considered a power created on or before such date if the person executing such will dies before July 1, 1949, without having republished such will by codicil or otherwise, after October 21, 1942."

Appellant argues that, "No similar provision was required to cover revocable inter vivos trusts executed prior to October 21, 1942, for the obvious reason that trusts of any size are subject to the continuous scrutiny of institutional fiduciaries who have available the services of competent attorneys." Whether, and to what extent, inter vivos trusts were more subject to such scrutiny than were wills, we do not know, and can only surmise or speculate. There is, we think, a simpler and more reasonable explanation for the fact that that statute confined the definition of the "date of creation" of a power of appointment to one created by will. The only contingency provided for was the one peculiar to wills, that is, that wills are necessarily drafted and executed for a considerable time before they become effective upon the death of the testator. The statute did not undertake to provide for the many other contingencies which might be common to both testamentary trusts and to inter vivos trusts. The latter ordinarily become effective upon the execution and delivery of the trust indenture shortly after it has been drafted. The statute was enacted on the assumption that the "date of creation" of an inter vivos trust was already sufficiently definite.

■■ Words should, as a rule, be given their ordinary and normal meaning. As related to powers of appointment, "the date of creation" ordinarily refers to the effective date of the trust instrument. As to inter vivos trusts, that is the date of execution and delivery of the trust indenture. As to testamentary trusts, that is the date of death of the testator, from which the will speaks. An entire sub-topic of the title "Powers" in each of the leading encyclopedias of law,[8] supplies evidence of such general usage of "create" with reference to powers.

We think that such ordinary and normal meaning of the word "created" carries out the intent of Congress as disclosed by the legislative history of the Act. It provides a definite test and

8. 72 C.J.S. Powers § 9 et seq. "II. Creation and Validity," p. 407; 41 Am.Jur. p. 810, "II. Creation."

avoids the necessity of litigation[9] from which "little or no revenue will accrue to the Government, and such as is received will come from the unwary or those who are powerless to help themselves."[10]

■ We conclude then that Horace S. Turner "created" the powers when he executed and delivered the trust indentures, not when he died.

That brings us to the last question: "Did the decedent exercise the powers of appointment in her will?"

■ It has been long and well established that the law of the state where the will was intended to operate governs questions as to exercise of powers found in a will.[11] However, the Alabama Supreme Court recently denied an adjudication of the precise question as to the construction of this decedent's will. State v. Merchants National Bank of Mobile, 1956, 265 Ala. 375, 91 So.2d 480. That Court stated at 91 So.2d at page 481:

> "The question of whether the corpus of the two trusts should have been included in the estate for estate tax purposes is a close one. It may very well be that these two trusts should not have been included in the estate; but, due to the peculiar nature of our estate tax law, that question is not before us on this appeal. The proper place, as we see it, to adjudicate the correctness of the inclusion of the two trusts in the estate for estate tax purposes is in a Federal Court."

In the case of Matthews v. McDade, 72 Ala. 377, in determining that a sale by an executor exercised a power conferred by a will, the Alabama Supreme Court stated that,

"* * * It must be apparent that the transaction in question is not fairly or reasonably susceptible of any other interpretation, than as indicating an intention to execute the power; * * *."

And later that Court stated in Cramton v. Rutledge, 1908, 157 Ala. 141, 47 So. 214, 217, quoting Story:

> "* * * 'For if he (the donee of the power) leaves it uncertain whether the act is done in execution of the power or not, it will not be construed to be an execution of the power.'"

See also, Rice v. Park, 1931, 223 Ala. 317, 135 So. 472.

In the absence of statutory authority, a large majority of states (with Massachusetts and North Carolina to the contrary) follow the view that a residuary clause will not be construed to execute a power where a clear intent to exercise does not appear from the will. 41 Am. Jur., Powers, § 48; 32 A.L.R. 1395; 72 C.J.S. Powers, § 40, p. 445. Here, it is quite apparent that the decedent had no intent to exercise the powers of appointment because she undertook to leave all of her property of whatever kind in trust for her husband so long as he lived, and he must of necessity be dead for the exercise of the powers to be effective.

We hold, therefore, that the powers in question were created prior to October 21, 1942, and were not exercised by the residuary clause of decedent's will. It follows that the value of the appointive property should not be included in decedent's gross estate under Section 811 (f). The judgment of the lower court is therefore

Affirmed.

---

9. For example, on the question of the substantiality of the contingency. The appellant concedes in brief:
   "We do not contend that any and every contingency, even if inconsequential, would preclude creation of a general power of appointment. Cf., e. g., Bankers Trust Co. v. United States, 156 F.Supp. 930 (Ct.Cl.). Here there are two contingencies and both are exceedingly substantial."

10. See footnote 7, supra.

11. Helvering v. Stuart, 1942, 317 U.S. 154, 161, 63 S.Ct. 140, 87 L.Ed. 154; Helvering v. Safe Deposit & Trust Co., 4 Cir., 1941, 121 F.2d 307; Barclay v. United States, 3 Cir., 1949, 175 F.2d 48; Cone, 31 B.T.A. 515; Union & Peoples National Bank, 30 B.T.A. 1277 (1934; A); Estate of Shepherd, 39 B.T.A. 38 (1939; N.A.).