Winifred H. TURNER, Executrix of the Estate of Alice H. Turner, deceased, Plaintiff

v.

UNITED STATES of America, Defendant.

No. 11803.

United States District Court, W. D. Missouri, Western Division.

Sept. 29, 1959.

Elmer B. Hodges, Kansas City, Mo., for plaintiff.

Edward L. Scheufler, U. S. Atty., by J. Whitfield Moody, Asst. U. S. Atty., Kansas City, Mo., for defendant.

DUNCAN, Chief Judge.

Plaintiff instituted this suit under the provisions of Title 28 United States Code, § 1346(a)(1) as amended by Act July 30, 1954, c. 648, Sec. 1, 68 Stat. 589, to recover the sum of $2755.13 Internal Revenue taxes which she contends were erroneously and illegally assessed and collected.

The matter is before the court on Stipulation[1]. (Caption omitted)

[1] "Stipulation

"The parties stipulate that the following facts are true and will constitute the evidence in this case, subject to the right of either party to introduce additional evidence not inconsistent herewith.

"1. Winifred H. Turner, Executrix of the estate of Alice H. Turner, deceased, is the plaintiff in this action. Plaintiff is a citizen of the State of Missouri and is the duly appointed, qualified and acting executrix of the estate of Alice H. Turner, deceased, and was so appointed by the probate court of Jackson County in the State of Missouri by letters testamentary on said estate duly issued to her thereby. Alice H. Turner died on December 11, 1955, a resident of the State of Missouri. A copy of her last will and testament is made a part hereof as Exhibit A.

"2. On or about March 8, 1957, plaintiff filed with the District Director of Internal Revenue for the Western District of Missouri, a federal estate tax return on behalf of the estate of Alice H. Turner, deceased, and at the same time paid federal estate taxes of $18,031.78.

"3. The federal estate tax return referred to in paragraph 2 above included in the gross estate of the decedent as a power of appointment held by the decedent the value of the proceeds of life insurance policies No. 893730 and No. 894964 issued by Northwestern Mutual Life Insurance Company on the life of decedent's husband, Frederick H. Turner, who died on July 12, 1948. The value of the policies was $5,000 each, a total of $10,000. No part of such $10,000 was paid to the decedent by the insurer during the lifetime of the decedent, and no such payment was requested by her.

"4. Policy No. 893730 and Policy No. 894964, together with all addendums thereto, are made a part hereof as Exhibits B and C, respectively. The dates reflected by such exhibits are correct.

"5. The Probate Court of Jackson County, Missouri, allowed James E. Campbell for services rendered and expenses incurred in ascertaining and fixing the Inheritance Tax in the estate of Alice H. Turner, deceased, the amount of $238.39, which was paid by the estate. The federal estate tax return only claimed $50.00 as an estimated amount for these services.

"6. On November 8, 1957, plaintiff filed a claim for refund with the defendant on behalf of the estate of Alice H. Turner, deceased, and plaintiff attached a copy of this claim to its complaint. More than six months elapsed after the filing before plaintiff instituted this action.

"7. If decision is for the plaintiff, the Internal Revenue Service will compute the amount of judgment. If plaintiff disagrees with such computation, the matter will be presented to the Court."

(Signatures omitted)

The principal issue in controversy is whether a fund of $10,000 held by the Northwestern Mutual Life Insurance Company is includible in decedent's gross estate.

The husband of Alice H. Turner died on July 12, 1948. In September 1911 Frederick H. Turner took out two insurance policies with the Northwestern Mutual Life Insurance Company in the sum of $5,000 each. In 1924 he executed a designation of beneficiary under which settlement of the proceeds of the policies was to be made with his wife, Alice H. Turner, the decedent herein, under Option A, as set forth in the policy, which is made a part of the Stipulation.

Under this option, the beneficiary was to receive an annuity of $2.47 per month for each $1,000 of net proceeds until her death, after which similar payments were to be made to the contingent beneficiaries, Gilbert H. Turner and Winifred H. Turner, the son and daughter of the insured. Under this designation the right of surrender and withdrawal or commutation of the principal was specifically withheld from the beneficiary, Alice H. Turner, his wife, during her lifetime.

In March of 1935, the previous designation of contingent beneficiaries and the optional settlement was revoked and a new designation of contingent beneficiaries and optional settlement was created. Under this supplement, no change was made as to Alice H. Turner's power to receive the annuity supplements under Option A as set out in the previous designation, but she was given the privilege of surrender and withdrawal during her lifetime. This privilege had not been granted to her in the previous designation.

Under the supplement of March 6, 1935, upon the death of Alice H. Turner, the proceeds would continue to be held under Option A, and the annuity payments would be made to Gilbert H. Turner and Winifred H. Turner, son and daughter of the insured, during their lifetime, with the privilege of surrender and withdrawal also being given to them.

Alice H. Turner never exercised any of the privileges of withdrawal or surrender of the proceeds of the policies, and they apparently were held by the insurer without reduction from the time of the death of the insured until the death of Alice H. Turner.

It is plaintiff's contention that the power provided in the policy in favor of Alice H. Turner was created prior to October 21, 1942, and since it was never exercised, it was not taxable as a part of her gross estate under the provisions of § 2041(a)(1), I.R.C.1954, 26 U.S.C. § 2041(a)(1).

It is the contention of the Government that, as the power created by Frederick H. Turner was subject to revocation at all times prior to his death, it could not have been exercised by the beneficiary thereof, and was not created until his death.

The issue therefore is, when was the power created? The applicable section of the statute is § 2041, I.R.C.1954, which provides:

"§ 2041. Powers of appointment.

"(a) *In General*—The value of the gross estate shall include the value of all property (except real property situated outside of the United States)—

"(1) *Powers of appointment created on or before October 21, 1942.*— To the extent of any property with respect to which a general power of appointment created on or before October 21, 1942, is exercised by the decedent—

"(A) by will, or

"(B) By a disposition which is of such nature that if it were a transfer of property owned by the decedent, such property would be includible in the decedent's gross estate under sections 2035 to 2038, inclusive;

"but the failure to exercise such a power or the complete release of such a power shall not be deemed

an exercise thereof. If a general power of appointment created on or before October 21, 1942, has been partially released so that it is no longer a general power of appointment, the exercise of such power shall not be deemed to be the exercise of a general power of appointment if—

"(i) such partial release occurred before November 1, 1951, or

"(ii) the donee of such power was under a legal disability to release such power on October 21, 1942, and such partial release occurred not later than 6 months after the termination of such legal disability.

"(2) *Powers created after October 21, 1942.*—To the extent of any property with respect to which the decedent has at the time of his death a general power of appointment created after October 21, 1942, or with respect to which the decedent has at any time exercised or released such a power of appointment by a disposition which is of such nature that if it were a transfer of property owned by the decedent, such property would be includible in the decedent's gross estate under sections 2035 to 2038, inclusive. A disclaimer or renunciation of such a power of appointment shall not be deemed a release of such power. For purposes of this paragraph (2), the power of appointment shall be considered to exist on the date of the decedent's death even though the exercise of the power is subject to a precedent giving of notice or even though the exercise of power takes effect only on the expiration of a stated period after its exercise, whether or not on or before the date of the decedent's death notice has been given or the power has been exercised."

The Commissioner, by Rule 278, 1953–2 CB 267, has determined administratively that:

"It is the position of the Internal Revenue Service that a power of appointment conferred in a life insurance policy that does not become effective until the death of the insured is not 'created' within the meaning of section 811(f) of the Code so long as the insured retains the right to surrender the policy."

Almost the identical question was before the Court of Appeals for the Fifth Circuit in United States v. Merchants National Bank of Mobile, 261 F.2d 570. A brief history of the Act is found at loc. cit. 574:

"Before the 1942 Revenue Act, the effective date of which was October 21, 1942, only the exercise of a power of appointment was taxable. The taxation of the mere possession of unexercised powers was new to the federal tax system. * * * the 1942 Act applied to powers created before as well as after its enactment. It provided a short period, that is, up to January 1, 1943, for the release of pre-existing powers without tax liability. That period was repeatedly extended up to July 1, 1951, at which time the Powers of Appointment Act of 1951 became effective. The Senate Report stating the legislative history of that Act, shows that, with an exception not now pertinent, ' * * * the intent of the bill is to restore the law regarding pre-existing powers as it existed prior to the 1942 Act'; that 'in 1942 there were in existence a great many powers which had been created years before, *in reliance on the law as it then existed!*"

That case involved a trust fund rather than insurance policies, but like the case before us, it was also a revocable trust and the Government there raised the same question that it raises here, that the power which could not be exercised until after the death of the creator did not come into existence until his death. In that connection, the court stated:

"The fact that a general power of appointment must be exercisable at the time of the decedent's death does not prevent the tracing of its creation back to a time before it became exercisable. It is said that Athena sprang full-grown from the brain of Zeus, but not every power is exercisable when the instrument from which it is derived first becomes effective. 'Create' ordinarily implies going back to the very beginning of a thing, as for example, 'God *created* the heaven and the earth,' Genesis, c. 1. It may well be argued, we think, that these general powers of appointment had their beginning, were 'created', for a long while before they became exercisable."

That Court determined finally that the power was created, not as of the time when it became exercisable, but at the time it was actually created.

I think the same principle may apply in this case, and that the power was created at the time Frederick H. Turner provided the method in which it should be payable, although it was not exercisable until after his death.

█ Certainly the construction placed upon the statute by the Commissioner is entitled to great consideration, yet, if it appears to the court that the regulation is repugnant to the provisions of the statute, the court is not required to adopt it.

█ It is my conclusion that the power in this case was created by Frederick H. Turner on March 6, 1935, and that the plaintiff is entitled to recover of the defendant, the amount of the overcharge, together with interest.

There apparently is no dispute as to the right of the plaintiff to deduct the sum of $188.39, the amount in excess of the first computed cost of assessing the Estate Inheritance Tax.

The parties stipulated that in the event the finding was for the plaintiff, the amount would be computed and supplied to the court. Such form of judgment may be supplied to the court within ten days.