ESTATE OF ERNESTINA ROSENTHAL, DECEASED, JAMES ROSENTHAL AND WILBERT ROSENTHAL, EXECUTORS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 77181.   Filed April 29, 1960.

*James D. Long, Esq.,* for the petitioner.
*Conley G. Wilkerson, Esq.,* for the respondent.

#### OPINION.

TIETJENS, *Judge:* The Commissioner determined a deficiency in estate tax liability of $996.97.

The only question for decision is whether the powers to appoint the proceeds of certain life insurance policies possessed by decedent at the date of her death, June 20, 1956, were created after October 21, 1942. If they were created after that date the proceeds would be includible in her gross estate as determined by the Commissioner.

All of the facts are stipulated and are so found.

The estate tax return (Form 706), showing no estate tax due, was filed in the office of the district director of internal revenue at Cincinnati, Ohio, prior to September 20, 1957.

On the date of her death, June 20, 1956, Ernestina, the decedent, possessed general powers of appointment over the proceeds of certain life insurance policies under which her son, Nathaniel Rosenthal, who died February 25, 1945, was the insured.

During 1938 Nathaniel entered into settlement agreements with his insurers on the policies providing, in effect, that if such policies should mature as death claims the proceeds should be retained by the insurers, interest thereon was to be paid to Ernestina, and she was given general powers of appointment over the proceeds.

Under the terms of the policies the insured retained the unconditional right to revoke or change the beneficiaries and methods of payment. Ernestina did not at any time exercise the powers of appointment which she possessed over the policy proceeds at the time of her death.

In determining the deficiency herein the Commissioner held that Ernestina had general powers of appointment over the life insurance proceeds of the policies on the life of her son and "that such * * * powers of appointment were created after October 21, 1942." Accordingly, the Commissioner held that the proceeds subject to the powers of appointment were includible in Ernestina's gross estate.

As stated in the Commissioner's brief:

The provisions of section 2041(a)(1) of the Internal Revenue Code of 1954 tax as part of the gross estate the extent of any property with respect to which a general power of appointment created on or before October 21, 1942, was exercised by the decedent. Under section 2041(a)(2), if the power of appointment was created after October 21, 1942, the value of the property over which the power of appointment was possessed is taxable in the gross estate whether or not the power of appointment was exercised. Therefore, as the subject powers of appointment were not exercised, the critical question for determination in this case involves the dates they were created.

The Commissioner's contention, specifically, is that the powers of appointment which Ernestina had at the time of her death over the insurance proceeds were "created" at the date of Nathaniel's death in 1945, when the policies became death claims and that before that time Ernestina had no powers of appointment at all.

On the other hand, petitioner argues that the powers were created at the time Nathaniel executed the settlement agreements with the insurance companies, i.e., in 1938.

Except as to powers of appointment provided for in wills the statute provides no guide in determining when a power of appointment is created. With respect to wills it is provided that a power

created by a will executed on or before October 21, 1942, shall be considered a power created on or before such date if the person executing the will dies before July 1, 1949, without having republished such will after October 21, 1942. This helps little in deciding the present problem which involves an inter vivos transaction.

As to inter vivos transactions the Commissioner's position is that "the power is generally considered to be created when the instrument is executed. However, where the instrument is revocable, the power is not considered to be created until the power of revocation lapses or is revoked, Reg. section 20.2041–1(e)."

We find no warrant in the statute for distinguishing between revocable and nonrevocable powers. The statutory language refers only to "a general power of appointment created on or before October 21, 1942." The parties do not argue that the power with which we are concerned was not a "general power." The only point of difference is when it was created.

As we see it, whether a power is revocable or not has nothing to do with the time of its creation. To us, the very statement that a power is revocable carries with it the recognition that the power has been created. Otherwise what is there to be revoked? A nullity?

In the case we have we think the powers were "created" at the time the settlement agreements were executed by Nathaniel in 1938. True, the powers provided for in the agreements could be revoked before his death and could not be exercised until the policies became death claims, but we think the powers existed until revoked, which they were not, and hence were created on the making of the settlement agreements. We think that here the Commissioner is confused between the date of the creation of the powers and the date of the happening of the event that made them exercisable.

This distinction was pointed out by the Court of Appeals for the Fifth Circuit in *United States* v. *Merchants National Bank of Mobile*, 261 F. 2d 570. That case involved the creation date of powers of appointment contained in fully revocable trust instruments in which a wife was given powers to be exercised in the event her husband, the transferor, predeceased her. The Commissioner argued there, as he does here, that the powers were not created on the date the trust instruments were executed, but on the date of the husband's death, which was after October 21, 1942. The court said, in deciding that the date of the trust instrument was the date of the creation of the power:

The fact that a general power of appointment must be exercisable at the time of the decedent's death does not prevent the tracing of its creation back to a time before it became exercisable. It is said that Athena sprang fullgrown from the brain of Zeus, but not every power is exercisable when the

instrument from which it is derived first becomes effective. "Create" ordinarily implies going back to the very beginning of a thing, as for example, "God *created* the heaven and the earth," Genesis, c. 1. It may well be argued, we think, that these general powers of appointment had their beginning, were "created", for a long while before they became exercisable.

\* \* \* \* \* \* \*

Words should, as a rule, be given their ordinary and normal meaning. As related to powers of appointment, "the date of creation" ordinarily refers to the effective date of the trust instrument. As to inter vivos trusts, that is the date of execution and delivery of the trust indenture. As to testamentary trusts, that is the date of death of the testator, from which the will speaks. An entire sub-topic of the title "Powers" in each of the leading encyclopedias of law, supplies evidence of such general usage of "create" with reference to powers.

We think that such ordinary and normal meaning of the word "created" carries out the intent of Congress as disclosed by the legislative history of the Act. It provides a definite test and avoids the necessity of litigation from which "little or no revenue will accrue to the Government, and such as is received will come from the unwary or those who are powerless to help themselves."

We conclude then that Horace S. Turner "created" the powers when he executed and delivered the trust indentures, not when he died.

*United States* v. *Merchants National Bank*, *supra*, has been followed in *Hubner* v. *United States*, (D.C. Cal., 1959) 187 F. Supp. 659, and *Turner* v. *United States*, (D.C. Mo., 1959) 178 F. Supp. 239.

The *Hubner* case was concerned with a power of appointment created by an amended supplementary contract under a matured insurance policy executed in 1939 whereby the insurance company was directed to pay the income from a deposit of the proceeds to the insured for his life and thereafter to his wife for her life with the right in her to draw down all the funds on deposit. The insured retained the full right to revoke the contract. The court held that the power of appointment in the wife was created prior to October 21, 1942, and not at the date of the husband's death in 1946.

The *Turner* case involved powers of appointment given in settlement agreements under insurance policies almost identical to the ones involved here. The court held that the powers were created at the time the settlement contracts were executed and not on the death of the insured.

The Commissioner argues that the above cases are either distinguishable or incorrectly decided.

We think the cases are applicable here and were correctly decided. Accordingly we hold that the powers of appointment conferred upon Ernestina were created prior to October 21, 1942, and that the insurance proceeds are not includible in her gross estate.

Reviewed by the Court.

*Decision will be entered for the petitioner.*