**UNITED STATES of America,**
**Appellant,**

v.

**Walter A. HUBNER and Citizens Commercial Trust and Savings Bank of Pasadena, Executors of the Estate of Gertrude H. Hurst, Deceased, Appellees.**

**No. 16817.**

United States Court of Appeals
Ninth Circuit.

Dec. 7, 1960.

---

Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, L. W. Post, Attorneys, Department of Justice, Washington, D. C., Laughlin E. Waters, Lillian W. Stanley, Asst. U. S. Atty., Los Angeles, Cal., for appellant.

Brydolf, Eddy & Gray, Morton H. Eddy, Pasadena, Cal., Gibson, Dunn & Crutcher, F. Dainel Frost, Arthur O. Armstrong, Jr., Los Angeles, Cal., for appellees.

Before STEPHENS, BARNES and JERTBERG, Circuit Judges.

JERTBERG, Circuit Judge.

The appellees were successful in the district court in securing a judgment against the appellant in the sum of $33,955.28 for federal estate taxes which plaintiffs alleged had been erroneously assessed and collected, plus interest and costs. Appellant appeals from such judgment.

The district court had jurisdiction under Title 28 U.S.C.A. § 1346(a) (1). This Court has jurisdiction under Title 28 U.S.C.A. §§ 1291 and 1294.

The judgment was amended by an order of the district court nunc pro tunc so as to provide that deduction for attorneys' fees incurred by appellees in prosecuting the action may be determined by the district court after remand by this Court following its decision on this appeal.

The broad question presented on this appeal is whether an amount on deposit with an insurance company and the value of the assets of a trust are includable in the gross estate of a decedent.

The material facts are not in dispute. As set forth in the appellant's brief and adopted by the appellees they are:

The decedent, Gertrude R. Hurst, died testate a resident of Pasadena, California, on December 8, 1955, and appellees are the duly appointed executors of her will.

The decedent's husband W. Randolph Hurst died on March 6, 1946.

On May 23, 1927, the husband had purchased from a life insurance company a single premium endowment policy having a face value of $50,000. He retained all of the incidents of ownership of the policy. After maturity of the policy, the husband left the proceeds on deposit with the insurance company under a supplementary contract. Under the terms of the supplementary contract as amended and as it stood on the date of the husband's death, the company was to make payments of interest (plus allotted dividends) to him during his lifetime and thereafter to his wife for her life, with ultimate distribution of the principal fund to their children on terms which are not material here. The contract further provided that the husband, and in the event of his death, the wife, should have the right to withdraw the deposit in whole or in part at any time.

On October 13, 1942, the husband established a revocable trust, under the terms of which the husband could revoke or amend it at any time during his lifetime, and after his death his wife could revoke or amend the trust if she should survive him. In case of revocation, the trust estate was to be paid over to or upon the order of the one exercising the right of revocation. In the absence of revocation, the net income of the trust was payable to the wife for life and thereafter to their children on terms which are not material here.

There was no revocation or withdrawal from the principal of either the insurance fund or the trust fund at any time during the lifetime of the husband. The wife made no withdrawal after his death; and on June 25, 1947, she released her right to withdraw the amount on deposit with the insurance company, and she also released her right to revoke the trust.

The appellees filed a timely federal estate tax return for the wife's estate, but did not include either the amount on deposit with the insurance company or the value of the corpus of the above mentioned trust in the gross estate. The determination by appellant that such items should be included in the gross estate resulted in tax deficiencies which were paid by the appellees.

The district court held that the items in question should not be included in the wife's taxable estate since the powers of appointment conferred upon her by her husband under the above mentioned instruments were created prior to October 21, 1942, within the meaning of Section 2041(a) (1) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 2041(a) (1), and that the release of such powers by the wife could not be deemed an exercise thereof.

The legal issue presented by this appeal is whether the powers of appointment held by the wife under the above mentioned instruments and released by her in 1947 were created on or before or after October 21, 1942, within the meaning of Section 2041(a) (1) of the 1954 Code. If they were created on or before October 21, 1942, the judgment of the district court must be affirmed. If they were created after October 21, 1942, the judgment of the district court must be reversed.

Section 2041 of the Internal Revenue Code of 1954 in pertinent part provides:

"Sec. 2041. Powers of appointment.

"(a) In general.—The value of the gross estate shall include the value of all property (except real property situated outside of the United States)—

"(1) Powers of appointment created on or before October 21, 1942.— To the extent of any property with respect to which a general power of

appointment created on or before October 21, 1942, is exercised by the decedent—

"(A) by will, or

"(B) by a disposition which is of such nature that if it were a transfer of property owned by the decedent, such property would be includible in the decedent's gross estate under sections 2035 to 2038, inclusive;

"but the failure to exercise such a power or the complete release of such a power shall not be deemed an exercise thereof. * * *

"(2) Powers created after October 21, 1942.—To the extent of any property with respect to which the decedent has at the time of his death a general power of appointment created after October 21, 1942, or with respect to which the decedent has at any time exercised or released such a power of appointment by a disposition which is of such nature that if it were a transfer of property owned by the decedent, such property would be includible in the decedent's gross estate under sections 2035 to 2038, inclusive. * * *

* * * * * *

(b) Definitions.—For purposes of subsection (a)—

"(1) General power of appointment.—The term 'general power of appointment' means a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate; except that—

"(A) A power to consume, invade, or appropriate property for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent, shall not be deemed a general power of appointment.

* * * * * *

"(3) Date of creation of power. —For purposes of this section, a power of appointment created by a will executed on or before October 21, 1942, shall be considered a power created on or before such date if the person executing such will dies before July 1, 1949, without having republished such will, by codicil or otherwise, after October 21, 1942."

■ The date October 21, 1942 is the date of the approval of the Revenue Act of 1942. Before the enactment of this Act only the exercise of a power of appointment was taxable. That Act taxed the exercise of certain special or limited powers of appointment as well as the mere possession of unexercised powers. The 1942 Act applied to powers created before as well as after its enactment. It provided a short period, that is, up to January 1, 1943, for the release of pre-existing powers without tax liability. That period was repeatedly extended, up to July 1, 1951, at which time the Powers Appointment Act of 1951 became effective. See United States v. Merchants National Bank of Mobile, 5 Cir., 1958, 261 F.2d 570, at page 574. Under the law as it now stands a distinction is drawn between general powers created before and after October 21, 1942. If created on or before that date they are taxable only if exercised, and a complete release does not constitute an exercise. If created after that date the mere possession of the power is enough to support the tax, and even a complete release will not absolve the holder's estate from taxation if he retained the income from the appointive property for life.

■ The parties agree that the powers of appointment granted to the wife under both instruments were general powers of appointment as defined by law. It is clear from the statement of facts that the supplementary contract, under which the proceeds of the matured insurance policies were left on deposit with the insurance company, and the trust agreement were executed prior to October 21, 1942. It is likewise clear that the powers of appointment granted to the wife under such instruments, of the appointive property, were never exercised

by her. The fact that the wife released her rights to withdraw the insurance funds and revoke the trust on June 25, 1947 was not an exercise of such powers by the express language of Section 2041 (a) (1) (B).

The basic argument of appellant is that, since the husband retained until he died in 1946 the right to revoke the trust and to withdraw the insurance funds on deposit, no powers were created in favor of the wife by the execution prior to October 1942 of the trust agreement and the insurance fund deposit agreement, and that the powers of the wife were created by the death of the husband on the date of his death in 1946.

Appellant's position is reflected in Treasury Regulations [1954 Code, Section 20.2041–1(a), adopted June 24, 1958, 23 F.R. 4539] which appellant claims to be applicable. This regulation reads as follows:

"Sec. 20.2041–1 Powers of appointment; in general—

\* \* \* \* \* \*

"(e) Time of creation of power. A power of appointment created by will is, in general, considered as created on the date of the testator's death. However, section 2041(b) (3) provides that a power of appointment created by a will executed on or before October 21, 1942, is considered a power created on or before that date if the testator dies before July 1, 1949, without having republished the will, by codicil or otherwise, after October 21, 1942. Whether or not a power of appointment created by an inter vivos instrument executed on or before October 21, 1942, is considered a power created on or before that date depends upon the facts and circumstances of the particular case. For example, assume that A created a revocable trust before October 21, 1942, providing for payment of income to B for life with remainder as B shall appoint by will. If A dies

after October 21, 1942, without having exercised his power of revocation, B's power of appointment is considered a power created after October 21, 1942. On the other hand, assume that C created an irrevocable inter vivos trust before October 21, 1942, naming T as trustee and providing for payment of income to D for life with remainder to E. Assume further that T was given the power to pay corpus to D and the power to appoint a successor trustee. If T resigns after October 21, 1942, and appoints D as successor trustee, D is considered to have a power of appointment created before October 21, 1942. As another example, assume that F created an irrevocable inter vivos trust before October 21, 1942, providing for payment of income to G for life with remainder as G shall appoint by will, but in default of appointment income to H for life with remainder as H shall appoint by will. If G dies after October 21, 1942, without having exercised his power of appointment, H's power of appointment is considered a power created before October 21, 1942, even though it was only a contingent interest until G's death. If, in this last example, G has exercised his power of appointment by creating a similar power in I, I's power of appointment would be considered a power created after October 21, 1942. A power of appointment is not considered as created after October 21, 1942, merely because the power is not exercisable or the identity of its holders is not ascertainable until after that date."

Under such regulations, an irrevocable power contained in an inter vivos instrument is created when the instrument is executed, but a revocable power is *considered* created when it lapses or is revoked. It is to be noted that Section 2041(a) (1) makes no distinction between revocable and irrevocable powers. The statutory language refers only to "a

general power of appointment created on or before October 21, 1942."

Appellant concedes that in the ordinary and natural sense a power of appointment is "created" at the time of the execution of the instrument containing the power, but argues that to apply such natural and ordinary meaning to a revocable power would exalt form over substance because no completed gift or transfer ensued where the donor retains a power of revocation. Corliss v. Bowers, 281 U.S. 376, 50 S.Ct. 336, 74 L.Ed. 916; Burnet v. Guggenheim, 288 U.S. 280, 53 S.Ct. 369, 77 L.Ed. 748.

The basic and peripheral arguments of appellant advanced in this case have been considered and rejected in several other cases which cases, appellant concedes, support the decision of the district court in this case. The leading case is United States v. Merchants National Bank of Mobile, supra, affirming the judgment of the district court reported in 156 F.Supp. 827. That case involved the creation of powers of appointment contained in fully revocable instruments executed prior to October 21, 1942, in which the wife was given powers to be exercised in the event her husband, the trustor, predeceased her. Appellant argued in that case, as it does here, that the powers were not created on the date of the execution of the trust instruments but on the date of the death of the husband, which was after October 21, 1942. The court in that case analyzed the provisions of Section 811 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 811, from which was derived Section 2041 of the Internal Revenue Code of 1954, the reach and the purpose of the section in the light of the legislative history, and concluded that the powers of appointment were created when the trust instruments were executed and delivered and not when the husband died. We see no need to repeat here what was said in that case except to express our concurrence therein.

In Turner v. United States, D.C.W.D. Mo.W.D.1959, on appeal to the 8 Cir.,

178 F.Supp. 239, the court followed the rationale of United States v. Merchants National Bank of Mobile, supra. The Turner case involved revocable powers of appointment given in settlement agreements executed prior to October 21, 1942, under insurance policies. The appointee died in 1955 without having exercised the powers granted to withdraw or surrender the proceeds of the policies. The court held that the powers granted to the decedent were created on the date of the execution of the settlement agreement and not at the date of the death of the appointee.

A similar conclusion was reached by the Tax Court of the United States in the Estate of Ernestina Rosenthal et al. v. Commissioner of Internal Revenue, 34 T.C. 17, decided April 29, 1960. In that case the decedent died in 1956. She possessed general powers of appointment over the proceeds of certain life insurance policies under which her son, who died in 1945, was the insured. In 1938 the son entered into settlement agreements with insurance companies providing, in effect, that if such policies should mature as death claims the proceeds should be retained by the insurers. Interest was to be paid to the decedent, and she was given general powers of appointment over the proceeds. Under the terms of the policies the insured retained the unconditional right to revoke or change the beneficiaries and methods of payment. The decedent did not at any time exercise the powers of appointment which she had over the policy proceeds at the time of her death. The Tax Court stated, "As we see it, whether a power is revocable or not has nothing to do with the time of its creation. To us, the very statement that a power is revocable carries with it the recognition that the power has been created. Otherwise what is there to be revoked? A nullity?"

In our view, the district court correctly decided under the facts of this case and applicable law that the powers of appointment conferred by the husband upon the decedent were created prior to October 21, 1942, within the meaning of

Section 2041(a) (1) of the Internal Revenue Code of 1954.

The judgment of the district court is affirmed, and the case is remanded to the district court to adjudicate the merits of any claim of appellees for an additional refund of taxes due by virtue of the deduction for attorneys' fees incurred by appellees in the prosecution of the action.